Harry L. JAMES and C. R. Virtue, Appellants,

v.

HONAKER DRILLING, INC., a Kansas corporation, Appellee.

No. 5726.

United States Court of Appeals Tenth Circuit.
April 28, 1958.

Charles Hill Johns, Oklahoma City, Okl. (Anita Ellerbee, Smith, Johns & Neuffer, Oklahoma City, Okl., William F. Pielsticker, Edwyn R. Sherwood, Pielsticker & Sherwood, Wichita, Kan., were with him on the brief), for appellants.

Robert Martin, Wichita, Kan. (Barton Carothers, Great Bend, Kan., George B. Collins, Oliver M. Hughes, Kenneth W. Pringle, Jr., William F. Schell, Thomas M. Burns, George R. Docking, Wichita,

Kan., were with him on the brief), for appellee.

Before BRATTON, Chief Judge, and HUXMAN and MURRAH, Circuit Judges.

BRATTON, Chief Judge.

Harry L. James and C. R. Virtue sued Honaker Drilling, Inc., to recover damages for alleged wrongful acts on the part of the defendant which made it impossible for plaintiffs to earn a broker's fee from San Juan Exploration Company. It was alleged in the complaint that plaintiffs were brokers; that defendant advised plaintiffs that it desired to sell its oil and gas properties; that defendant employed plaintiffs to negotiate for it a sale of such properties; that plaintiffs were instrumental in interesting San Juan Exploration Company as a prospective purchaser of the properties; that the prospective purchaser agreed to pay plaintiffs a commission of $30,000 if it purchased the properties; that the defendant was advised of the agreement of the prospective purchaser to pay such commission; that in the course of negotiations between defendant and the prospective purchaser, defendant offered to sell the properties to the prospective purchaser for $1,700,000; that by mutual agreement between the defendant and the prospective purchaser, the latter was given a specified time within which to complete its investigation of the properties; that the prospective purchaser advised defendant that it would purchase the properties at approximately the price set by defendant, but before the investigation of the properties was completed, defendant sold them to Colorado Oil and Gas Company; and that in such wrongful manner defendant breached its contract of employment of plaintiffs and made it impossible for plaintiffs to earn the commission which the prospective purchaser had agreed to pay them in the event it purchased the properties. By answer, the defendant denied that it employed plaintiffs to negotiate a sale of the properties; denied that it made an unqualified offer to sell the properties to

the prospective purchaser; denied that the prospective purchaser ever advised defendant that it would purchase the properties at defendant's price; and denied that the prospective purchaser was ever ready, able, and willing to make the purchase at defendant's price. After issues were joined, the depositions of both plaintiffs and of R. J. Bateman, agent of the prospective purchaser, were taken. Thereafter the defendant filed a motion for summary judgment in its favor. Upon consideration of the pleadings and the depositions, such judgment was entered; and plaintiffs appealed.

Without conflict, the depositions disclosed these facts. James and Virtue resided in Oklahoma City, Oklahoma; and they maintained offices there. They were brokers dealing in oil and gas properties and drilling operations. Louis Thompson, a resident of Hutchinson, Kansas, was also a broker dealing in like properties and operations in Kansas. Honaker was a corporation with offices in Great Bend, Kansas, and it owned certain oil and gas properties in Kansas. Joe J. Honaker acted for the corporation. San Juan Exploration Company maintained offices in Dallas, Texas, and it was engaged in the business of acquiring, developing, and selling oil and gas properties. Bateman resided in Oklahoma City, and he was agent for San Juan. James had an arrangement with Bateman through which he submitted to Bateman from time to time for the consideration of San Juan purchasable oil and gas properties. While in Wichita, Kansas, looking for production deals for purchasers whom they represented, James and Virtue met Thompson and learned from him that a portion of the properties owned by Honaker could be acquired for approximately $340,000. Thompson arranged an appointment for James and Virtue to call on Honaker. Upon reaching Honaker's office, James and Virtue stated to Honaker that they were brokers and had buyers for properties. They stated that they were not prospective purchasers but represented somebody else that had money and could buy the properties. Honaker stated to James and Virtue that he did not want to offer the properties for sale until an engineering report then being made was completed and he had time to review it. James and Virtue told Honaker that they would contact him again later after he had received the report. About a week later, James called Honaker on long distance telephone and was told that Honaker had received the report but had not had time to review it and that he and his associates were not in position to furnish any information at that time. But he agreed to call James when the review had been made. About a week later, Honaker called James on long distance and told him that the Honaker Company had decided to sell all of its properties and he inquired whether the people whom James and Virtue represented would be interested in a deal that large. James and Virtue contacted Bateman. From Bateman's office, James called Honaker on long distance and placed Honaker and Bateman in communication with each other on the telephone. James, Virtue, and Bateman went to Great Bend. Honaker and Bateman negotiated respecting the properties. While Bateman was examining certain data in the offices of the Honaker Company, James and Virtue told Honaker that San Juan had agreed to pay them a commission of $30,000 if the properties were acquired. Honaker placed a sale price of $1,750,000 upon the properties. Later in the day, he reduced the price to $1,700,000. Bateman stated to Honaker that he thought the properties were worth about $1,600,000, but he did not state that San Juan would purchase them at that price or at any other price. It was agreed that San Juan should have a certain time within which to make its investigation of the properties, and the time was extended once or twice. While engaged in making its investigation of the properties, San Juan advised Honaker that it was interested in further negotiations relating to the sale and purchase of the properties, but it did not make any commitment whatever to purchase them at the price fixed by

Honaker or at any other price. By reason of certain operating agreements, Colorado Oil and Gas Company held a preferential right to purchase a portion of the Honaker properties in the event Honaker desired to sell all or any portion of its properties. While San Juan was engaged in making its investigation of the properties, Colorado exercised its preferential right of purchase and did purchase all of the properties owned by Honaker; and Honaker immediately notified San Juan that a sale to Colorado had been consummated.

It is sought to overturn the judgment upon the ground that where a broker, at the request of the owner of property, finds a purchaser who is able to buy and brings the two together, and thereafter the owner takes the negotiations into his own hands, and the owner makes a firm offer to sell at a stated price and extends to the prospective purchaser a definite time within which to accept such offer, and prior to the expiration of such extended time, the owner sells the property to another party thereby making it impossible for the broker to earn a commission which the prospective purchaser had agreed to pay him if and when the sale and purchase were consummated, the owner becomes liable in damages to the broker in a sum equal to the amount of the commission. The case of Zeligson v. Hartman-Blair, 10 Cir., 135 F.2d 874, is relied upon to sustain the contention. There the district court dismissed the action for failure of the complaint to state a cause of action upon which plaintiff could recover. On appeal, the judgment was reversed. But according to the facts pleaded in the complaint in that case, the owners of an undivided one-half interest in an oil and gas property agreed with a broker that they would sell their interest in the property to any purchaser produced by him for $150,000, net to them; the broker produced a purchaser who was ready, able, and willing to purchase the property for that price and on the terms proposed by the owners; the owners were informed that the broker was to receive from the purchaser a commission of $7,500; and thereafter the owners refused to complete the sale. It was held that after agreeing with the broker to sell the property to any purchaser produced by him for a stated price, net to them; and after the broker produced a purchaser who was ready, able, and willing to buy the property at the price and on the terms specified by the owners, and to pay to the broker a commission, the refusal of the owners to consummate the transaction amounted to a breach of their agreement with the broker with resulting liability in damages in an amount equal to the commission which the broker would have received from the purchaser if the transaction had been completed. But here, the brokers did not produce a prospective purchaser who was ready, able, and willing to purchase the properties at the price specified by the owner, or at any other price satisfactory to him. The brokers produced a prospective purchaser who was merely willing to investigate the properties in respect to their value and to negotiate in respect to their purchase. The brokers produced a prospective purchaser who indicated that in its opinion the properties were worth about $100,000 less than the sale price fixed by the owner. The brokers produced a prospective purchaser who did not accept the offer of the owner, did not make any counter offer, and did not even indicate a willingness to enter into any commitment whatever in respect to a price which it would pay for the properties. And in producing such prospective purchaser, the brokers acted for it and looked to it for their compensation. There was no contractual relationship between the owner and the brokers; the owner did not agree expressly or by implication to pay the brokers anything; and the brokers were not looking to the owner for a commission or other compensation. Insofar as the owner was concerned, the brokers occupied a position fairly comparable to that of a third-party beneficiary to the extent of having the right to receive from the prospective purchaser their commission if and when the transaction was consummated.

And the withdrawal of the offer of sale to the prospective purchaser—effected through the giving of the notice that the properties had been sold to Colorado before such offer was accepted—did not constitute any breach of duty or obligation which the owner owed to the brokers with resulting liability in damages. Upon equally manifest grounds, this case is also clearly distinguishable from the recent case of Smith v. Gibraltar Oil Co., 10 Cir., 254 F.2d 518.

■■ Rule of Civil Procedure 56, 28 U.S.C., authorizes the entry of summary judgment when it affirmatively appears from the pleadings, depositions and admissions on file, together with the affidavits, if any, that there is no genuine issue as to any material fact and that the moving party is entitled to judgment in his favor as a matter of law. The rule is not intended to provide a substitute for the regular trial of cases in which there are disputed issues of fact upon which the outcome of the litigation depends. And it should be invoked with caution to the end that litigants may be afforded a trial where there exists between them a bona fide dispute of material facts. But if it appears that there is no genuine issue as to any material fact upon which the outcome of the litigation depends, the cause is appropriate for disposition by summary judgment and the court should enter such judgment. Broderick Wood Products Co. v. United States, 10 Cir., 195 F.2d 433; SMS Mfg. Co. v. U.S.-Mengel Plywoods, 10 Cir., 219 F.2d 606. And where the moving party presents affidavits, or depositions, or both, which taken alone would entitle him to a directed verdict, if believed, and which the opposite party does not discredit as dishonest, it rests upon that party at least to specify some opposing evidence that he can adduce which may reasonably change the result. Zampos v. United States Smelting, Refining and Mining Co., 10 Cir., 206 F.2d 171.

For the reasons indicated, the evidence adduced by the depositions, including that of the plaintiffs themselves, clearly showed that there was no genuine issue in respect to any material fact upon which the outcome of the litigation depended, and that the defendant was entitled to judgment in its favor as a matter of law. Therefore, the case was appropriate for entry of summary judgment dismissing the action.

Affirmed.