405 P.2d 339

**Mr. and Mrs. Richard E. LUNDSTROM, et al., Plaintiffs and Appellants,**

**v.**

**RADIO CORPORATION OF AMERICA, Utah Electronics, Inc., and Continental Thrift & Loan Company, Defendants and Respondents.**

**No. 10174.**

Supreme Court of Utah.

Sept. 2, 1965.

2. See Rule 56 U.R.C.P. and cases cited in annotation Frederick May & Company v. Dunn, 13 Utah 2d 40, 368 P.2d 266.

Dwight L. King, David B. Dee, Salt Lake City, for appellants.

Kipp & Charlier, Carmen E. Kipp, Craig T. Vincent, Salt Lake City, for respondents.

McDONOUGH, Justice:

This is a suit to avoid for fraud and misrepresentation a conditional sales contract between the Richard E. Lundstroms (and others similarly situated) as buyers, against Utah Electronics, Inc., seller, and its assignee, Continental Thrift & Loan Company, defendants. Jury verdict and judgment was against Utah Electronics, Inc. but in favor of the Continental Thrift & Loan Company. Plaintiffs appeal attacking the judgment as to the latter only, charging the lower court with error in (1) ruling summarily against plaintiffs on their claims of fraud against Continental; (2) refusing to instruct the jury that two contracts each purchaser signed comprised one transaction; and (3) in rejecting plaintiffs' contention that the purchase contract was usurious.

Plaintiffs, numerous buyers, each purchased colored television sets from Utah Electronics for approximately $995 per set. The conditional sales contracts each signed expressly provided that they could be assigned, and that the "buyer waives as against any assignee of the seller any defenses, set-offs, or counterclaims buyer may be entitled to assert against the seller." The parties simultaneously executed another agreement by which the buyers would participate in a "Reference Sales Plan." It was represented they could partly or completely pay for their own television sets by giving the seller the names of prospective purchasers. They were to receive $50 payment for each prospect who purchased a set; and a payment of $250 to a

purchaser who tendered names of 10 qualified prospective purchasers, regardless of future purchases. It is the contention of the plaintiffs that this was an illusory promise, not intended to be kept, and that the defendant Utah Electronics arbitrarily disqualified prospective purchasers on whimsical and capricious grounds which is verified by the fact that for only one purchaser, out of approximately 500, did Utah Electronics accept 10 prospective purchasers and credit the $250.

The defendant Continental Thrift appears to have been cautious, if not indeed overcautious, in insisting that the defendant Utah Electronics keep the principal sales contract and the so-called "Reference Sales Plan" as separate transactions. In addition to both of the agreements so stating and containing the clause waiving any defense which the purchaser may have as against an assignee, Continental also requested the seller to record on a mechanical recorder disc the oral conversation of each purchaser acknowledging his understanding that the conditional sales contract was separate from the "Reference Sales Plan," irrespective of performance or breach by Utah Electronics on the reference sales agreement. In addition to this, in accepting the conditional sales contract for financing, Continental required a signed receipt of delivery of the television; phoned the purchaser involved to inform them of the assignment and confirm a satisfactory installation of the set; and of the latter's understanding of this obligation before advancing the money to Utah Electronics. It is shown that most of these plaintiffs had made several payments to the defendant before becoming sufficiently disenchanted with the reference sales arrangement to resort to bringing this action.

The most telling point made by the plaintiffs in connection with their claim that Continental was in pari delicto in that they knew all of the facts, and so aided and abetted in the arrangement that they should be charged with the fraudulent scheme of Utah Electronics is that they resorted to the precautions just recited, particularly that they required the voice recording showing the plaintiffs' understanding. It is urged that from these facts it could reasonably be inferred that Continental knew that the sales scheme of Utah Electronics was a deception and fraud involving illusory promises which it never intended to perform; and that Continental should be held equally responsible.

In support of the ruling of the trial court rejecting the plaintiffs' contention as to Continental Thrift on the ground that there was not a sufficient showing of fraud on its part, these observations are pertinent. First, fraud is a wrong of such nature that it must be shown by clear and convincing proof and will not lie in mere

suspicion or innuendo.[1] Even though it appears that Continental may have been extremely cautious in these transactions as hereinabove recited, the mere fact that they took such care to see that the plaintiffs clearly understood the situation should not redound to their detriment. It is also worthy of note that the plaintiffs themselves seemed perfectly willing to pass on the "advantages" of such transactions to their friends by referring them as prospects. The most significant fact is that Continental was not the only finance institution to deal in these contracts of sale of Utah Electronics. They were to be financed by any institution willing to advance the money. In fact, about 50 per cent of them were financed otherwise than by Continental. Continental was faced with the necessity of either losing this business or taking such measures as they thought would completely protect them from any questionable aspects of the "Reference Sales Plan." Their method of operation did not violate any duty they owed the plaintiffs, but rather tended to fulfill it.

The plaintiffs' contention that the trial court should have instructed the jury that the two agreements constituted one transaction, and that whatever was done by Utah Electronics was chargeable against Continental is grounded upon Rule 13(j) U.R.C.P., which places the assignee in the shoes of his assignor. That rule is sound under proper circumstances, but it does not have the effect of abrogating the rights of parties to freely contract with respect to their rights and remedies upon assignment.[2] We do not disparage the rule contended for that the parties may be held jointly responsible where the assignee is "so identified with the seller [assignor] that it must in fairness be assumed that the dealings of one are inextricably interwoven with the other."[3] But what has been said above indicates that the trial court was correct in concluding that this was not the situation here and in refusing to instruct the jury as requested. In the absence of compelling considerations of policy to the contrary, it is the duty of the court to give effect to the covenants which parties have agreed to in their contract.[4]

Plaintiffs also contend that the sales contract is usurious in charging more than the maximum legal rate of 10% per year interest, and that it does not qualify as a "conditional sales contract" to justify charging interest "in the amount of 1% of the unpaid balance multiplied by the

1. Pace et al. v. Parrish et al. (1952) 122 Utah 141, 247 P.2d 273.
2. Straight v. James Talcott, Inc., 329 F. 2d 1 (10th Cir.).
3. Public Nat'l Bank & Trust Co., of New York v. Fernandez, Mun.Ct., 121 N.Y.S. 2d 721.
4. Anglo-California Trust Co. v. Hall, 61 Utah 223, 211 P. 991; United States ex rel. and for Benefit of Administrator of F. H. A. v. Troy-Partisian, Inc., 9 Cir., 115 F.2d 224.

number of months of the contract or 12% per annum" as permitted under conditional sales contracts by Sec. 15–1–2a, U.C.A.1953. They argue that the sales contract here does not meet the requirement of Sec. 15–1–2a, U.C.A.1953, which provides that every conditional sales contract, "shall contain all of the agreements between the buyer and the seller relating to the personal property described therein." The contract of sale is an integrated whole which could be performed independent of any performance or nonperformance of the "Reference Sales Plan" agreement. There is nothing in it which ties it to the "Reference Sales Plan" agreement; and the reverse is also true. The latter is also a separate agreement which obliged the buyer to do nothing unless he so desired. It gives him the privilege of rendering a service for a credit to be allowed by Utah Electronics.

▮ The final contention is that the price charged for the sale of these television sets on the time payment contract was greatly in excess of the regular retail price for cash and that this excess itself constituted the exaction of usury. The evidence shows that the wholesale price on the sets was around $470; that the recommended retail price was $695, whereas, the actual sales on these contracts was between about $900 and just under $1,000. The recognized rule is that a sale of an article on credit at a price higher than for cash is not usurious if it is a bona fide sale of that character, which is known to the buyer, and is not a subterfuge for charging a higher interest rate. This is so even though the difference between the two prices would make the total amount paid exceed the amount of the interest that could lawfully be charged on the cash price.[5] This is not affected by the fact that the price charged might be above the manufacturer's suggested retail price. In the absence of fraud, deception or misrepresentation, the parties have the undoubted right to bargain and arrive at the price that will be paid for merchandise; and the price agreed upon, however excessive it may or may not have been, has nothing to do with the legality of the contracts.

Affirmed. Costs to defendant Continental Thrift & Loan Company.

HENRIOD, C. J., and CROCKETT, WADE and CALLISTER, JJ., concur.

5. Hallstrom v. Buhler, 14 Utah 2d 111, 378 P.2d 355; see generally 91 C.J.S. Usury § 18 (1955) (citing cases).