425 P.2d 769

**Marie E. PETERSON, Plaintiff and Respondent,**

**v.**

**WESTERN CASUALTY AND SURETY COMPANY, Defendant and Appellant.**

**No. 10524.**

Supreme Court of Utah.

March 29, 1967.

**28**

Hanson & Garrett, Salt Lake City, for appellant.

Hatch & McRae, Salt Lake City, for respondent.

CROCKETT, Chief Justice:

Marie E. Peterson, who had obtained a judgment against one Chuck Shim Lew for $12,500 for injuries suffered in an automobile collision, sued Western Casualty and Surety Company, Lew's insurer, to compel payment of the judgment. The policy contained the usual provision that a judgment creditor of the insured may bring such a suit. The defense relied upon by Western Casualty was that its insured had breached the cooperation clause of the policy and thus relieved it from liability. The trial court gave judgment to the plaintiff for the policy limit of $10,000, plus interest from the date of and on the amount of the prior judgment.

At the time set for pre-trial the attorneys presented to the court documentary evidence and depositions; and stipulated as to what certain testimony would be in the event of a trial. On the basis of the evidence so submitted each party urged that he was entitled to judgment. It is significant to note that neither in the trial court, nor on this appeal, has the defendant sought any further trial. It places reliance upon the evidence so presented and argues that it compels a finding as a matter of law that it exercised reasonable diligence to obtain

the cooperation of the insured; and that he failed to cooperate, which relieves it of liability under the policy. That is the issue we confront.

 The issuance of the policy and the payment of premiums establishes prima facie the liability of the insurer. The claimed violation of the policy provision requiring the insured to cooperate in defense of actions brought against him is an affirmative defense. The defendant has the burden of proving that it used reasonable diligence to obtain the insured's cooperation, and that this was not forthcoming, and that this was prejudicial to it.[1]

The collision occurred on February 24, 1963, and suit was filed in May. Thereafter in July, Western attempted to contact Lew, an apparently somewhat itinerant Chinese restaurant worker, by mail at one of two Salt Lake addresses it had for him. It was learned that Lew was in California and a letter was sent there in September, which brought a reply from him in Riverside. In it he asked if and when he would have to appear in court, which seemed to imply that he was willing to do so. Western wrote back, "We will advise you when it is necessary for you to appear in court or any other action which you might be required to take in connection with this case. Kindly keep us advised of your whereabouts so that we might either write or telephone you on short notice." No further attempt at contacting him was made until after the pre-trial was had. On February 7, 1964, a letter was sent to the Riverside address to advise Lew to be in Salt Lake by the trial date, March 12. That letter was returned with the notation that Lew no longer lived there. Defendant then learned from the agent who had sold Lew his policy that in October he had tried to locate Lew in California, but he had left Riverside for Canada; and further, that he had left there also, and that the best information obtainable was that he had gone to Miami or Miami Beach, Florida. Western Casualty made no further effort to locate him but after making a motion for a continuance to give more time to locate Lew, which the trial court denied, withdrew from the defense of the case; and judgment was taken against Lew for the sum of $12,500. It was upon these facts that the trial court refused to find that Western had exercised due diligence in locating Lew and in obtaining his cooperation.

 In approaching the question whether under the facts shown the trial court

1. Oberhansley v. Traveler's Ins. Co., 5 Utah 2d 15, 295 P.2d 1093; Montgomery v. Preferred Risk Mut. Ins. Co., 17 Utah 2d 333, 411 P.2d 488; State Farm Mut. Automobile Ins. Co. v. Farmers Ins. Exchange, 238 Or. 285, 387 P.2d 825, aff'd. on rehearing, 238 Or. 285, 393 P.2d 768.

was compelled to make such a finding, it is appropriate to reflect that determination of that issue in this action may be looked at somewhat differently than it would be in a suit between the primary parties to the insurance contract.[2] As a member of the public injured by the insured, plaintiff became a third-party beneficiary of the policy, but she had no control over the conduct of the parties inter se. There are some components inherent in this situation which suggest that a judge or jury might more readily believe that the insured (Lew) had breached his covenant to cooperate, if the suit were between him and the Company, than in one between the Company and this plaintiff. In the latter situation if it is determined that the Company exercised reasonable efforts to locate the insured (Lew) and he is not found, that may relieve the Comapny of liability entirely. Thus, if there is a fair chance that the suit may be lost, there exists at least a temptation for an insurer to merely go through the motions of seeking the insured's cooperation without actually desiring it, and thus establish a defense to liability on the policy. This possibility, or the possibility of lack of interest in cooperation, or even of collusion, is probably greater in a case such as the instant one, where it seems likely that an itinerant worker such as Lew may not be very much concerned about a judgment against him anyway.

The ever-increasing number of injuries from automobile accidents and the high proportion of drivers who have insufficient financial responsibility has been taken cognizance of by the legislatures of many states in enacting laws for the purpose of compelling the carrying of liability insurance, one type of which is our own Financial Responsibility Act.[3] Inasmuch as the purpose of the insurance is to protect not only the insured, but the public generally, the right which arises in anyone injured by an insured motorist should not be regarded lightly, nor permitted to be subverted by other parties over whom the injured one has no control.

For the reasons just discussed, in order to assure the protection intended for an injured person, it is appropriate for the trial court to scrutinize with particular care what the insurer has done to obtain the cooperation of the insured. In view of the anomalous situation where the insurance company has received compensation for undertaking a responsibility which it may be able to avoid by failing to discharge one part of its duty, it is proper to require a showing that the company used

---

2. See State Farm Mut. Automobile Ins. Co. v. Farmers Ins. Exch., footnote 1, supra.

3. See Chap. 12, Title 41, U.C.A.1953.

the same degree of diligence to secure the insured's cooperation that would have been exercised by a reasonable and prudent person where the cooperation of the insured would be to its advantage in protecting it against liability, rather than to relieve it therefrom. We believe this requirement that the insurer exercise the same diligence as it would exercise to protect its own interests, if there were no advantage to be gained if cooperation fails, is a fair and reasonable standard to apply in such situations and is not unduly burdensome to insurers.

There are some aspects of the evidence which may well be regarded as casting doubt on the defendant's assertion that the court must find that it fulfilled its duty in that regard. It is apparent that the company must have been aware that Lew was a somewhat itchy-footed restaurant worker who might be moving from job to job. Particularly after he was located in Riverside, California, assuming the Company's commitment of $10,000 depended vitally upon Lew's testimony as it contends, it would not be unreasonable to believe that it should have exercised care to ascertain that he would be available at the trial, or have his deposition taken. The fact that no arrangement was made for keeping in contact with him except the letter referred to,

which did not give him any estimate as to the possible time lapse before the trial, nor even advise him for sure whether he would have to appear, may well give rise to some doubt as to whether due diligence required some more definite action by the Company.

A further circumstance to which the comment just made also applies is that after the defendant company obtained information that Lew was probably in Miami or Miami Beach, it is not shown that they made any effort to locate him there. Insofar as it is disclosed, it may be that the Company looked for him everywhere except where they had reason to believe he was. We are not persuaded of the correctness of defendant's contention that the evidence compels a finding that the defendant company had used the degree of diligence it should have used if its interest had depended upon obtaining Lew's cooperation and testimony.

Defendant claims that since its liability extends only up to $10,000, it was error to award interest on the entire amount of the $12,500 judgment. In cases where the policy provision is not as clear as the instant one, the decisions are in conflict on whether an insurer is liable for interest on

the amount of a judgment above the policy limit.[4] The problem is taken care of quite plainly in our case by this provision of the policy:

> \* \* \* The Western agrees to pay, *in addition to* the applicable limits of liability \* \* \* *all interest on the entire amount of any judgment* \* \* \* which accrues after entry of the judgment and before The Western has paid \* \* \* that part of the judgment which does not exceed the limit of Western's liability thereon; \* \* \*.

The reason for the inclusion of such a provision seems to be a recognition of the fact that the delay in payment of the judgment is chargeable to the insurance company, since it controls in the litigation. We note that according to our figures the calculation of interest on the $12,500 judgment from the date it was entered, March 25, 1964, may be in error. There should be a correct computation of that interest at the legal rate of 8%.

Judgment affirmed except as to computation of interest. Costs to plaintiff (respondent).

CALLISTER, TUCKETT, HENRIOD and ELLETT, JJ., concur.

---

4. See annotation at 76 A.L.R.2d 983.