453 P.2d 701

LaVar C. FOX, Plaintiff and Respondent,

v.

ALLSTATE INSURANCE COMPANY, Defendant and Appellant.

No. 11336.

Supreme Court of Utah.

April 15, 1969.

property because of a contract in a prior conveyance or lease is omitted."

Wendell E. Bennett, of Strong & Hanni, Salt Lake City, for appellant.

Mark A. Madsen, of Hansen, Madsen, Freebairn & Goodwill, Salt Lake City, for respondent.

ELLETT, Justice:

The defendant appeals from a summary judgment in favor of plaintiff. The complaint alleges that on or about April 30, 1965, the defendant issued a binder to the plaintiff on a boat owner's policy of insurance and thereafter issued said policy to plaintiff, and that on or about May 2, 1965, the insured boat struck a submerged object in Utah Lake and sank. It further alleged that the defendant was duly notified of the loss but refuses to pay according to the terms of the policy of insurance.

The defendant's answer is a general denial. In answer to requests for admissions the defendant admitted the execution of the binder and the delivery of the policy. The plaintiff's deposition was taken by the defendant.

The plaintiff filed a motion for summary judgment for the relief demanded in his complaint and attached to the motion an affidavit wherein he stated under oath substantially the same things which he had alleged in his complaint.

The defendant filed an opposing affidavit as follows:

Keith Lambourne being first duly sworn upon oath deposes and says:

1. That he is a Property Claims Supervisor for the Allstate Insurance Company, the defendant named in the above entitled action.

2. That the defendant was not notified by the plaintiff of his claimed loss which allegedly occurred on May 2, 1965 until May 17, 1965 at which time the said LaVar C. Fox filed a written report of the alleged loss with the defendant, Allstate Insurance Company.

3. After the report of the alleged loss was furnished to the defendant by the plaintiff, representatives of the defendant went to the site on Utah Lake where plaintiff claimed his boat had sunk and in the presence and with the assistance of the plaintiff conducted a methodical search of the entire area where the boat had allegedly sunk, but no signs of the sunken craft were ever found, and no indications were found that there was a sunken craft in the area where the plaintiff indicated to the defendant his craft had sunk.

4. That on numerous occasions since the alleged loss of the plaintiff's boat, representatives of the defendants have made repeated requests for the plaintiff to produce proof of ownership of the boat that was allegedly sunk but the plaintiff has failed and refused to produce proof of said ownership.

5. On several occasions the plaintiff has refused to furnish information to the defendant regarding the facts of the accident, and on June 25, 1965 the plaintiff physically interfered with the defendant's investigation of the loss when the defendant was attempting to talk with the plaintiff's father, who's [sic] residence the plaintiff claimed he had stored his boat prior to its being sunk, and after the plaintiff's father had advised your affiant that he knew nothing about the existence of such a boat or his son's ownership of same, and was about to sign a statement to that effect the plaintiff physically took the paper from his father, tore it up, and refused to give it to your affiant.

6. Defendant has refused to make payment for the loss of said boat due to the fact that the plaintiff has failed to meet the conditions of the policy he claims to have with the defendant, has failed to prove that he had an insurable interest in the boat which was allegedly lost.

7. Due to the plaintiff's failure and refusal to cooperate and to present proof of ownership and proof of loss, the defendant has refused, and still refuses to make any payment of any kind on the grounds and for the reason that the plaintiff has failed and refused to show that he had an insurable interest, and that he suffered any

loss in the event he had an insurable interest.

The plaintiff claims that the affidavit filed by defendant shows on its face that it is incompetent because it "is based on hearsay," and thus under Rule 56(c), U.R. C.P., it does not meet the positive allegations of plaintiff's affidavit.

In the first place, the plaintiff is in error in claiming that the statements in the affidavit are based on hearsay information. He confuses the hearsay rule with another rule of evidence which is to the effect that a party testifying must have an opportunity to know that about which he testifies. On voir dire examination it might be made to appear that the affiant was one of the representatives of the defendant and that he was present at all times mentioned in his affidavit. Even if it was made to appear that he was not present, the objection would not be one based on hearsay but rather on a lack of opportunity to know whereof he spoke. See McCormick on Evidence, § 226 at page 461.

By failing to move to strike the affidavit of Lambourne, the plaintiff waived the right to show whether the affiant knew first handed that about which he deposed.

In discussing this problem, Professor Moore states the following:

An affidavit that does not measure up to the standards of 56(e) is subject to a motion to strike; and formal defects are waived in the absence of such a motion or other objection.[1]

In regard to the statements in the paragraph numbered 5 of Lambourne's affidavit, if the son was present and heard his father state that he (the father) knew nothing about a boat being stored at his place, then there would be an exception to the hearsay rule, since such a statement would be made under circumstances which would naturally call for some response from the plaintiff. It seems rather obvious that the plaintiff did hear and understand what was being said, and the statement in paragraph 5 of the affidavit is admissible as showing what the reaction of the plaintiff was in trying to prevent the defendant from ascertaining the truth of the matter.

Whether or not the affidavit of Lambourne is defective is not a serious matter in this case for the reason that the plaintiff in his deposition testified to many of the same things which are in the affidavit.

A synopsis of his testimony in his deposition is as follows:

1. He bought a 17-foot inboard-outboard Glasspar boat from a total stranger.

---

1. 6 Moore Fed.Pr. at page 2817.

2. He does not know where the boat was last registered.

3. He paid $2200 cash to the stranger but got no bill of sale.

4. His wife did not know about his buying the boat.

5. He had secreted the cash at home in a tin box for nearly a year, the amount of cash being unknown to his wife.

6. He and the stranger transferred the boat in a parking lot of a shopping center from one trailer to another by themselves and without any help.

7. On April 30, 1965, he had the boat insured for $2,000.

8. Two days later, on May 2, 1965, he took the boat to Utah Lake, where he launched it by himself with no one being present to witness the act.

9. He drove the boat a few miles out to Bird Island, where he felt it strike an object, although no water came into the boat until later during a windstorm.

10. Almost immediately after striking the object with his boat, he noticed that the wind had increased greatly, and waves three or four feet high were beating against his boat.

11. The boat dropped front first into the trough between two waves and disappeared.

12. Although a 17-foot boat could not remain afloat, the plaintiff was able to swim safely to shore, a distance of from one half to one mile.

13. The plaintiff made no report of the loss of his boat until three or four days later, when he contacted a representative from the Utah Park Commission.

14. The plaintiff and representatives from the defendant's office searched the lake where the boat went down and covered the whole area of the lake in an efficient manner but found no boat.

15. At all times after he bought the boat and until he took it to the lake he stored it at his father's place.

The testimony of the plaintiff given in the deposition does not overcome the issue of whether he owned the boat which he insured with the defendant or whether he lost a boat at all. Had the parties rested with no evidence other than the deposition being before the court, we do not think a motion for a directed verdict could properly be granted. The issues would be for the jury's determination, and the fact that the defendant was not able to produce negative evidence would not entitle the plaintiff to win as a matter of law.

If the law were otherwise, anyone could allege that he ate a mouse which was in a can of pork and beans, and while he might or might not be able to recover on the trial of the action against the canner and distributor of the food, he could win on a

motion for summary judgment simply because there could not be a counter affidavit filed saying that there was no mouse in the can. All that a defendant could do in a situation such as is supposed above or in this case would be to rely on circumstantial evidence and the wisdom and honesty and good judgment of the jury to arrive at a correct verdict.

We do not think the plaintiff has sustained the burden of showing that there is no issue of fact to be tried by a jury, and we, therefore, reverse the ruling of the district court and remand the case for a trial upon the merits. Costs are to abide the final outcome of this matter.

CROCKETT, C. J., and HENRIOD, J., concur.

CALLISTER, Justice (dissenting):

I dissent.

Plaintiff, on the basis of his pleadings, deposition, and certain admissions on file, together with his affidavit, moved for summary judgment, which the trial court granted. Defendant Insurance Company, which had filed an opposing affidavit, appeals on the ground that there was a genuine issue as to material facts and, therefore, the trial court erred in granting plaintiff's motion.

In his complaint, plaintiff alleged that on or about April 30, 1965, he was issued a binder on a boatowners policy of insurance and thereafter the policy itself for which he paid a premium [1] and that on or about May 2, 1965, while on Utah Lake, his insured boat struck a submerged object, sank and was lost.

Defendant answered the complaint with a general denial. Subsequently, the defendant, in answer to plaintiff's Request for Admission, admitted the execution of the binder and delivery of the policy. Thereafter, it took plaintiff's deposition and had an opportunity to examine him in detail as to the existence of the boat and the circumstances surrounding its loss.

Attached to plaintiff's motion for summary judgment was his affidavit in which he attested to the fact that he was alone in his boat and that it struck a submerged object and sank and that the boat, motor, and all personal property aboard were lost. He also attested to the fact that the defendant had refused to make any payment in accordance with the insurance policy although, at one time, it indicated that it would.

Defendant filed an opposing affidavit of Keith Lambourne, its property claims supervisor. The problem arises as to whether this affidavit complies with Rule 56(e),

1. Photostatic copies of the binder and the front page of the policy were attached to plaintiff's Request for Admissions.

U.R.C.P.,[2] thus raising genuine issues of material facts which would preclude summary judgment.

Lambourne's affidavit fails to meet the requirements of Rule 56(e). In it, he states that the defendant Company was not notified of the claimed loss on May 2, 1965, until May 17, 1965, when plaintiff filed a written report. However, if this statement amounts to a valid defense, which we doubt, it is to be noted that neither a copy of the report nor of the insurance policy was attached to the affidavit and is not in evidence.

If sworn or certified copies of all papers referred to in an affidavit are not attached as Rule 56(e) requires, they cannot be relied upon to raise a genuine issue of fact.[3]

The foregoing principle is equally applicable to affiant's statement that plaintiff has failed to meet the conditions of the policy in that he has not proved that he had an insurable interest in the boat which was allegedly lost.

Lambourne further attests that after the report of the alleged loss, representatives of defendant went to the site on Utah Lake where plaintiff claimed his boat had sunk and, with the assistance of plaintiff, conducted a methodical search of the entire area, and no indications were found that there was a sunken craft in the area where plaintiff indicated his boat had sunk.

The foregoing is hearsay and, as such, would not be admissible at trial.[4] An affidavit under Rule 56(e) "must be made on the personal knowledge of the affiant, set forth facts that would be admissible in evidence, and show affirmatively that the affiant is competent to testify to the matters stated therein."[5]

The affidavit of Lambourne continues with a statement that on numerous occasions representatives of defendant have requested that plaintiff produce proof of

2. "Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence and *shall show affirmatively that the affiant is competent to testify to matters stated therein.* Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith. The court may permit affidavits to be supported or opposed by depositions, answers to interrogatories, or further affidavits. When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him." [Emphasis added.]

3. Washington Post Co. v. Keogh, 125 U.S. App.D.C. 32, 365 F.2d 965, 20 A.L.R.3d 972, 980 (1966); 6 Moore's Federal Practice, § 56.11(3), p. 2170.

4. 6 Moore's Federal Practice § 56.22(1), pp. 2806–2809.

5. Id., p. 2803.

ownership, which plaintiff has refused and failed to do. This statement is subject to the same infirmities previously mentioned. In addition, the facts appear to be more in the nature of a summary than the type of evidentiary facts required under Rule 56 (e).[6]

Lambourne's affidavit states that plaintiff refused to furnish information regarding the facts of the accident and that on June 25, 1965, plaintiff physically interfered with defendant's investigation of the loss while affiant was attempting to talk with plaintiff's father, at whose residence plaintiff had claimed that he had stored the boat. Affiant states that the father had advised him that he knew nothing of the existence of the boat or of the son's ownership and was about to sign a statement to that effect when plaintiff physically took the paper from his father and tore it up.

The father's alleged statement to affiant is hearsay and does not qualify under Rule 56(e).[7] It is further of significance that plaintiff in his deposition testified that his father was now dead and defendant, although it had knowledge of plaintiff's alleged interference with its investigation, elected not to pursue the matter in its deposition of the plaintiff.

Lambourne's affidavit concluded:

Due to plaintiff's failure and refusal to cooperate and to present proof of ownership and proof of loss, the defendant has refused, and still refuses to make any payment of any kind on the grounds and for the reason that the plaintiff has failed and refused to show that he had an insurable interest, and that he suffered any loss in the event he had an insurable interest.

The foregoing consists of factual conclusions and arguments. It does not come within the ambit of Rule 56(e), i. e., it does not "set forth *specific facts* showing that there is a genuine issue for trial."

Was the award of summary judgment to plaintiff "appropriate"?

Plaintiff in his deposition described the manner in which he acquired the boat, i. e., he observed it on a parking lot and contacted the owner through the information displayed thereon. He paid $2,000 in cash to the former owner, who gave him a receipt that is in the possession of the defendant. Defendant's agent inspected the boat and copied the motor number therefrom. Plaintiff's mother is alive, and he stored the boat at her residence.

All of the foregoing facts contained in the deposition could have been met by defendant in opposing affidavits and created triable issues.

The uncontradicted testimony from plaintiff's deposition establishes that he had an

---

6. 3 Barron and Holtzoff, Federal Practice and Procedure, § 1237, p. 165.

7. Footnote 4, supra.

insurable interest.[8] "The issuance of the policy and the payment of premiums establishes prima facie the liability of the insurer. * * *" Peterson v. Western Casualty and Surety Co., 19 Utah 2d 26, 29, 425 P.2d 769 (1967).

Does plaintiff's sworn version of the loss of the boat in both his deposition and affidavit entitle him to a summary judgment? Yes.

* * * If, however, the moving party presents evidence which would entitle him to a directed verdict if not controverted and the opposing party does not discredit it, the opposing party must at least specify some opposing evidence that he can present which will change the result. In other words, the opposing party must show a plausible ground for his claim or defense. Facts set out in the moving party's affidavit showing that he is entitled to judgment must be accepted as true when not met by counter-affidavits or testimony. The mere denial of the moving party's contentions, without showing any facts admissible in evidence, raises no issue of fact. The opposing party must show how he will support his contentions that issues of fact are present. But he need not submit all his evidence and it is sufficient if he shows that he has evidence of a substantial nature, as distinguished from legal conclusions, to dispute that of the moving party on material factual issues.

The rationale of these cases seems to be the moving party has the burden of showing that there is no genuine issue as to a material fact and that he is entitled to judgment as a matter of law, but that when he has made a prima facie showing to this effect the opposing party cannot defeat a motion for summary judgment and require a trial by a bare contention that an issue of fact exists. He must show that evidence is available which would justify a trial of the issue.[9]

Finally, it is not correct that summary judgment must be denied where the case turns on facts peculiarly within the knowledge of the moving party. So long as the party opposing the motion has had full access to the facts—as normally he will through the discovery procedure— the motion should be granted if he has

8. See Sec. 33–19–4, U.C.A.1953; National Farmers Union Property and Casualty Co. v. Thompson, 4 Utah 2d 7, 12, 286 P.2d 249, 61 A.L.R.2d 635 (1955), wherein this court held that the insured has an insurable interest if he has a substantial economic interest, and the nature of his interest or the status of his title or possession is immaterial.

9. 3 Barron and Holtzoff, Federal Practice and Procedure, § 1235, pp. 146–149; also see Dupler v. Yates, 10 Utah 2d 251, 269–270, 351 P.2d 624 (1960), and James v. Honaker Drilling, Inc., (C.A. 10, 1958) 254 F.2d 702.

failed to show any genuine issue as to a material fact.[10]

In the instant action, defendant's basic assertion, although cast in several legal arguments, has been that plaintiff's claim is incredible, that in fact the boat never existed and that it never sank. However, as with any other fact, it takes more than vehement denials to place credibility in issue. To avoid summary judgment the opposing party must disclose "specific facts"; this defendant has failed to do.

From the foregoing, it is evident that defendant's contention that the trial court erred in denying its motion to alter and amend the judgment is without merit.

In the majority's opinion's synopsis of plaintiff's deposition, there are certain omissions which are significant.

Although plaintiff could not recall the name of the town, he knew the boat was previously registered in California. These papers were on the boat and were lost when it sank. The plaintiff did receive a receipt for the cash he paid from the vendor, which defendant has retained and significantly has refused to tender as evidence. His wife knew after the purchase that he had acquired the boat, although this matter is hearsay. His wife knew of the cash in the tin box but did not know the exact amount; this money was derived largely from the sale of a home they had previously owned. The plaintiff did not have a bank account but dealt strictly on a cash basis. The plaintiff did not immediately report the loss of the boat because he first made several attempts to locate it himself. Plaintiff's mother also lived at the father's residence and was still alive and available to testify about whether she observed the boat.

The mouse in the can situation cited by the majority is not analogous to the instant case. The insurance company could have indicated by affidavit of one of its agents that it was unable after a diligent search to locate the person whose name appeared on the receipt. Since defendant demanded the receipt shortly after the claimed loss thus indicating doubts as to the validity of plaintiff's claim, it could have procured affidavits from personnel who worked in the shopping center as to the issue of whether a boat had been displayed on the parking lot. The company could have interrogated plaintiff's mother as to her observations concerning the existence of the boat. Defendant could have presented the affidavit of its agent who plaintiff claimed inspected the boat and copied the motor number therefrom.

10. 3 Barron and Holtzoff, Federal Practice and Procedure, § 1232.2, p. 114; also see Bolack v. Underwood, (C.A.10, 1965) 340 F.2d 816, 819.

Upon a review of the entire record the defendant has, in effect, asserted that plaintiff is attempting to commit fraud without defendant's compliance with Rule 9(b), U.R.C.P., that averments of fraud shall be stated with particularity. The majority opinion has adopted this theory by its reversal of the judgment of the trial court. The basic issues upon trial will be whether plaintiff has falsely represented his ownership and loss of a boat to his insurance carrier. " * * * fraud is a wrong of such nature that it must be shown by clear and convincing proof and will not lie in mere suspicion or innuendo." [11] Defendant has not only failed to allege fraud but also has not tendered any admissible evidence in support thereof.

This case constitutes a dangerous precedent, wherein an insurance company through insinuation and harassment can defeat at its election any claim for loss sustained by an insured. Furthermore, the majority opinion has nullified Rule 56(e) just as effectively as if it had been specifically repealed by this court from the Rules of Civil Procedure.

TUCKETT, J., concurs in the dissenting opinion of CALLISTER, J.

[11]. Lundstrom v. Radio Corporation of America, 17 Utah 2d 114, 117–118, 405 P.2d 339, 341, 14 A.L.R.3d 1058 (1965).