424 F.2d 704
 PETROF TRADING COMPANY, a California corporation, Plaintiff-Appellee,
v.
INTERMOUNTAIN RESEARCH & ENGINEERING COMPANY, Inc., a Utah corporation, Defendant-Appellant.
PETROF TRADING COMPANY, a California corporation, Plaintiff-Appellee-Cross-Appellant,
v.
INTERMOUNTAIN RESEARCH & ENGINEERING COMPANY, Inc., a Utah corporation, Defendant-Appellant-Cross-Appellee.
 Nos. 252-69.
 Nos. 283-69.
 United States Court of Appeals, Tenth Circuit.
 April 28, 1970.
 
 C. Keith Rooker, Salt Lake City, Utah (Dale A. Kimball, Salt Lake City, Utah, on the brief), for appellant.
 Arthur H. Nielsen, Salt Lake City, Utah, (David S. Cook, Salt Lake City, Utah, on the brief), for appellee.
 Before MURRAH, Chief Judge, and HILL and HICKEY, Circuit Judges.
 HICKEY, Circuit Judge.
 
 
 1
 The amended complaint seeks reformation and damages for breach of the contract existing between plaintiff-appellee Petrof Trading Co. and defendant-appellant Intermountain Research and Engineering Co. Intermountain counterclaimed and defended on the theory that the contract was usurious and that therefore Intermountain was entitled to damages awarded pursuant to Utah statute penalizing usury.
 
 
 2
 The trial court refused reformation and awarded judgment to Petrof for the claims for money due under the contract. The defense of usury and the counterclaim for damages were denied.
 
 
 3
 Intermountain appeals to this court on the basis of the ruling denying the defense of usury and its counterclaim for damages. Petrof cross-appeals from the trial court's refusal to reform the contract.
 
 
 4
 Intermountain and Petrof executed the contract in question wherein Petrof agreed to sell and Intermountain agreed to purchase an amount of Navy surplus smokeless powder. Some of the powder was at Hastings, Nebraska, and some was located at McAlester, Oklahoma.
 
 
 5
 The issues presented herein relate to the interpretation of paragraph G(2) of the contract:
 
 
 6
 "Petrof may be able to pay 50% of the loading charges at Hastings. If he does Intermountain agrees to pay an additional ¼ cent per pound net (on Hastings material on which the loading charges are so paid) on or before the 31 December, 1966, provided, however, that Intermountain shall repay such amount when the last of the powder is resold if earlier than 31 December, 1966."
 
 
 7
 Intermountain contends the foregoing sets forth a device to extract usurious interest for the forbearance of a debt due, thereby sustaining their defense and establishing their claim for damages.
 
 
 8
 Petrof contends the parties intended the paragraph to provide that the entire Hastings material would increase ¼ cent in price if one-half the loading charges were paid. The court agreed with none of the foregoing contentions which gives rise to the issues appealed.
 
 
 9
 Petrof was the successful bidder for the purchase of gunpowder stored in Navy depots at various locations in the United States. This surplus property obtained by Petrof had to be loaded for transportation by experienced government personnel. The contract between the government and Petrof provided that the cost of loading would be an amount agreed upon which would be paid immediately upon loading. This was Petrof's obligation. Petrof entered into an agreement with Intermountain to sell Intermountain the gunpowder purchased from the government, and providing for an agreed price at the time of loading. Petrof paid the government from the amount paid it by Intermountain at the time of loading and an additional amount was agreed upon to be paid by Intermountain when it sold or used the gunpowder or in any event within five years thereafter.
 
 
 10
 Paragraph G(2), above set out and creating the issues herein, relates only to an amount of powder stored at Hastings, Nebraska, and is the only source of conflict in the transactions between the parties.
 
 
 11
 The evidence sustains the court's findings that after one-half of the powder had been loaded at Hastings under the provisions of the agreement, Petrof exercised its option to pay the loading charges thereby earning the price increase as provided in the contract provision. At this juncture in the transaction Petrof, in accord with the provision set out, notified Intermountain that it was able to pay the government for the remaining one-half of the powder and the delayed payment of Intermountain would be increased ¼ cent per pound as provided. The controversy over the interpretation of this provision resulted in the claim filed and determined by the trial court which gives rise to the appeal.
 
 
 12
 We are first faced with the question of what law controls the determination of the controversy.
 
 
 13
 Without objection the facts indicate the parties negotiated many of the terms of the contract in Nevada, however, the notes and data there agreed to were brought back to Utah where an instrument was prepared, executed and forwarded to California for final execution by Petrof. In diversity actions the court will apply the conflict of law principles of the forum state. Mullinax Eng. Co. v. Platte Valley Constr. Co., 412 F.2d 553 (10th Cir. 1969). Long ago the State of Utah decided the rights under a contract were controlled by the law of the state where the contract sued on was made. Crofoot v. Thatcher, 19 Utah 212, 57 P. 171 (1899). We believe the contract was made in Utah, and it is without question that it is the state of the forum. Therefore we seek our answers in the law of Utah.
 
 
 14
 The determination of whether or not the provision in the contract was usurious is a question of fact for the trier of the facts. Lundstrom v. Radio Corp. of America, 17 Utah 2d 114, 405 P.2d 339, 341 (1965), annot., 14 A.L.R. 3rd 1126 (1967).
 
 
 15
 We are governed by Fed.R.Civ.P. 52: "Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses." The trial court did find that the increased ¼ cent per pound was an integral part of the entire contract, that it constituted a portion of the purchase price and was not interest on a loan nor forebearance of the payment of money. We are not left with the "`definite and firm conviction that a mistake has been committed'" by the trier of the fact. Zenith Radio Corp. v. Hazeltine, 395 U.S. 100, 123, 89 S.Ct. 1562, 1576, 23 L.Ed.2d 129 (1969).
 
 
 16
 Utah recognizes the usury rule "that a sale of an article on credit at a price higher than for cash is not usurious if it is a bona fide sale of that character, which is known to the buyer, and is not a subterfuge for charging a higher interest rate." Lundstrom, supra 405 P.2d at 342.
 
 
 17
 Under the law and the evidence presented to the trier of fact we conclude he correctly determined the issues involving usury.
 
 
 18
 The issue presented on the cross-appeal relating to the interpretation or reformation of the contract to require the payment of ¼ cent per pound on all the powder sold from the Hastings depot is an issue of fact for the trial court.
 
 
 19
 The trial court was diligent in searching out the evidence that one-half the powder had been loaded and paid for by Intermountain before Petrof obligated itself for the last one-half of the powder. This was its option. If the language of a contract is clear and not subject to more than one interpretation, the ordinary plain meaning of the words of the contract must be used. Bryant v. Deseret News Pub. Co., 120 Utah 241, 233 P.2d 355 (1951); Oregon Short Line R. Co. v. Idaho Stockyards Co., 12 Utah 2d 205, 364 P.2d 826 (1961). We agree with the trial court's application of the foregoing and the determination at which it arrived.
 
 
 20
 Affirmed.