VERLE V. CRISSEY and MARJORIE C. CRISSEY, HUS-
BAND AND WIFE, PLAINTIFFS AND RESPONDENTS, *v.* THE
STATE HIGHWAY COMMISSION, ET AL., DEFENDANTS
AND APPELLANTS.

No. 10870.

Submitted September 17, 1965. Decided January 24, 1966. Petition for
rehearing granted February 10, 1966. Resubmitted and reargued March
8, 1966. Decided April 1, 1966.

413 P.2d 308.

Charles F. Angel, Ben E. Berg, Jr. (argued), Bozeman, for appellants.

Lyman H. Bennett, Jr. (argued), Bozeman, for respondents.

MR. JUSTICE DOYLE delivered the Opinion of the Court.

This Opinion is issued on rehearing of this appeal, and our previous Opinion promulgated on January 24, 1966, is withdrawn.

This is an appeal from a judgment reforming a right of way deed describing 15.36 acres of land purchased by the State of Montana, after negotiations, from the plaintiffs for an interchange located at the junction of Interstate Highway 90 and U. S. Highway 89 just west of the City of Livingston. The reformation, directed by the judgment below, deleted certain access restrictions relating to the plaintiffs' remaining lands adjoining U. S. Highway 89.

The facts are that on March 2, 1960, the plaintiffs, Dr. and Mrs. Crissey, executed and delivered to the defendant State Highway Commission a bargain and sale deed conveying the

15.36 acres to the defendant. Consideration therefor was $170,-000.00. Thereafter, a representative of the Highway Commission added to the deed a provision expressly restricting the right of access to the remaining property to the plaintiff.

On March 17, 1960, the plaintiffs received and cashed a check from the defendant for $170,000.00.

R.C.M.1947, § 13-909, provides: "The intentional destruction, cancellation, or material alteration of a written contract by a party entitled to any benefit under it, or with his consent, extinguishes all the executory obligations of the contract in his favor against parties *who do not consent to the act.*" (Emphasis added.)

Thus, the issue here is whether or not the plaintiffs had notice of the change at the time they accepted the check, to-wit, March 17, 1960. A further issue presents itself, as to what change or alteration in the access provision was agreed upon.

The defendant presents two theories supporting consent in this case. One is that the plaintiffs were aware prior to the execution of the deed that part of the consideration was for nonaccess to their remaining lands from the highway. The other is that the plaintiffs received a letter apprising them of the addition to the deed prior to the date on which they cashed the check.

In support of the first, Wayne Neil who appraised the property in 1958, testified that his discussion at that time with Dr. Crissey involved the fact that there would be no access to Crissey's remaining land from U. S. 89. J. V. Keyes, with whom the transfer was negotiated by Dr. Crissey, gave the following testimony regarding their discussions on March 1 and 2, 1960:

"Q. Will you tell the Court what you told Dr. Crissey with regards to access provisions? A. During the course of the negotiations on both of those dates I remember very vividly Dr. Crissey was advised by me that he would not have access to either the 9.66 acres to the south or the 3.86 acres to the north. As a matter of fact, I recall vividly explaining to Dr. Crissey

how he could unlock the land to the north by acquiring property facing the Park Highway, and buying a lot from Dave Werner, which I understand he has done. The matter of the small area to the south, or the area to the south of the 9.66 acres, he was told he would have no access facing the Park highway on that portion. * * * As a matter of fact, access was about all we had to talk about."

Further evidence in support of this theory was supplied by two documents. The right of way negotiation agreement, signed by both parties on March 2, 1960, spelled out consideration for the conveyance in this manner:

"15.36 acres at $6,106.12 per acre ................$ 93,790.00
Severance damages to 9.66 acres [of the
    Plaintiffs' remaining land] per appraisal   49,940.00
Other damages to 3.86 acres [of Plaintiffs'
    remaining land] per appraisal ..............   26,270.00
Total  ....................................................$170,000.00"

Keyes testified that these figures were taken from Neil's appraisal which was introduced in evidence. This appraisal said in part:

"After taking the 167,922 sq. ft. (3.96 A.) lying northerly from the new R/W, *will have no access* except through the owners' extravagantly landscaped yard and past his expensive type home. Damages to these improvements precludes any approach of this type. This remainder, then, becomes valuable only to adjacent ownership for expansion room in area in which to indulge a recreation.

"After taking, the 419,904 sq ft (9.66 acres) lying southerly from the new R/W and easterly from the controlled access highway, U. S. 89 will have *no approach over public roads."* (Emphasis added.)

This presumption is considered to be a strong one. Arkansas Motor Coaches, Inc. v. Commissioner of Internal Revenue, (C.A. 8th Cir.) 198 F.2d 189; 31A C.J.S. Evidence § 136, p. 291.

■■ In this case, while it is true that there is no direct

evidence of actual mailing of the letter, the presumption of receipt nevertheless arises. It is enough that there is an office practice or custom of mailing letters and that this practice or custom was followed. Prescott, Wright, Snider Co. v. City of Cherryvale, 134 Kan. 53, 4 P.2d 457; See Annotation 86 A.L.R. 541, 546, and cases cited therein. Here, there was a practice of putting all letters in an outgoing mail basket at the Butte district office. This practice was carried out.

Evidence of nonreceipt of mail matter, even though it consists of the addressee's positive denial of receipt, does not nullify the presumption, but leaves the question for the determination of the jury, or the court sitting without a jury, as the case may be, with such weight given to the presumption as they think it is entitled to. Renland v. First Nat. Bank, 90 Mont. 424, 4 P.2d 488. Such evidence of nonreceipt given by the addressee, however, should be regarded with caution. Renland v. First Nat. Bank, supra.

The plaintiffs interpose the contention that there was not the required evidence that the letter was properly addressed and stamped. W. J. Lake & Co. v. Montana H. P. Co., 109 Mont. 434, 97 P.2d 590. Testimony that it was put in the mail is considered the equivalent. Williams v. Northeast Mut. Ins. Ass'n, (Mo.App.1932), 51 S.W.2d 142. We deem that requirement to have been satisfied by the actions of Mr. Dundas in this case.

Corpus Juris Secundum sets forth certain facts which are held to strengthen the presumption of receipt of a letter duly posted. Among them are three apparently present in this case. First, it is strengthened when the letter was not returned to the sender. 31A C.J.S. Evidence § 136, p. 292. There is no evidence that the letter here involved was ever returned to the Butte district office. Second, it is strengthened when the addressee is well known. 31A C.J.S. Evidence § 136, p. 292. It can probably be said that Dr. Crissey is well known in the Livingston area. Third, and most important, the presumption

of receipt is strengthened when several documents were sent in the same envelope and it is shown that some of them were received. 31A C.J.S. Evidence § 136, p. 293. Here, Mr. Dundas testified that two other documents were mailed in the same envelope with the letter and Dr. Crissey acknowledged that he had received those two documents.

As to the time of receipt, the addressee is presumed to have received the letter as soon as it could have been transmitted to him in the regular course of the mails. W. J. Lake & Co. v. Montana H. P. Co., supra. Here, the letter was mailed on March 8, 1960. The plaintiffs arrived home on March 16 and did not accept the $170,000.00 check until March 17. It cannot be said that the regular course of the mails requires a longer interval than we have here to transmit a letter from Butte to Livingston, Montana.

The plaintiffs argue, however, that they did not see the documents received at this time. Dr. Crissey testified that it was sometime later that he saw the right of way negotiation agreement and the copy of the bargain and sale deed. The evidence indicates that the mail in question reached his address before the consent by acceptance of the check and that the plaintiffs were home one day prior to such acceptance. The fact that a letter was properly posted is sufficient to warrant the presumption that the addressee received it "in the due course of the mail *and was aware of its contents.*" (Emphasis added.) Stewart v. Arrow Creek Development Co., 66 Mont. 238, 242, 212 P. 1107.

However, as to whether the addressee was *aware of its contents* specifically, the district court's conclusions indicate that the addressees were not aware of the contents specifically as will appear hereinafter. And, an examination of all of the evidence presented reveals sufficient credible testimony to uphold the trial court in part.

It is our conclusion that the evidence presented in this trial clearly establishes the fact that the plaintiffs had notice of the

alteration of the deed prior to their acceptance of the $170,-000.00 check. They therefore must be held to have consented to a change in the access provision.

Now, however we are left with the problem of whether the change or alteration in the access provision was in conformity with the consent and agreement of the parties.

In the trial court's findings of fact and conclusions of law, there is no specific finding upon the subject of delivery or non-delivery of the letter in question as we have discussed previously; but, the trial court specifically concluded that the plaintiffs are not estopped from demanding relief prayed for in their complaint; that is, that the deed be reformed so that it correctly describes the premises intended to be conveyed.

To support the conclusions in part we will imply findings so long as the findings are not inconsistent with express findings made. (See Valier-Montana Land & Water Co. v. Ries, 109 Mont. 508, 97 P.2d 584; Crosby v. Robbins, 56 Mont. 179, 182 P. 122; Sherburne Mercantile Co. v. Bonds, 115 Mont. 464, 145 P.2d 827.)

Thus, even though Crissey received the letter, he was not aware of its specific contents, and the evidence so shows.

In the instant case the evidence clearly shows that agreement and consent by the plaintiffs to controlled access of their lands was made by them before the execution of the right of way deed. Thus, as early as 1958, Dr. Crissey knew that the appraisal of his property by the appraiser Wayne Neil was to be on the basis of nonaccess to his remaining lands. Subsequently, in his negotiations with J. V. Keyes, the right-of-way supervisor, on March 1st and 2nd, 1960, nearly all of their discussions were concerned with access to the remaining parcels of the Crissey lands. In this regard Keyes testified that the alteration of the deed was made pursuant to his understanding of the agreement made with the Crisseys at these negotiations. *Similarly, Crissey testified that as a result of these negotiations he understood that he was to have only one place*

*of access of approximately 120 feet located at the far end of his property near Colmey's Veterinary Clinic.* Crissey conceded that all the rest of his frontage on Highway 89 was to be under the restriction of controlled access provisions. Indeed, at trial he confirmed this understanding by identifying the controlled access lines on plaintiff's Exhibit 2. Moreover, Crissey testified and his counsel emphasized that the representatives of the Highway Commission also so understood the agreement because when the interchange was built, the extended sidewalks and curbs alongside of U. S. Highway 89 were built up to and within 120 feet of the southwest end of Crissey's property in accordance with this agreement.

Thus, except for the 120 feet of access claimed by Crissey, there was substantial agreement between the parties that the State was buying not only 15.36 acres of ground, but also that Crissey consented to controlled access of the remainder of their property fronting on Highway 89. Since this agreement and understanding of the parties could only be finally accomplished by including the controlled access provisions in the right of way deed, consent to include them in the deed is necessarily implied in Crissey's acceptance of the State's offer.

Under this state of facts, if a court of equity is to reform the deed, the reformation should at least be made to comply with the agreement as the plaintiffs concede it to be and as it was actually performed by the State in construction of the highway. Certainly, it is an abuse of the powers of equity to strike all of the nonaccess provision in complete disregard of the concessions obviously granted by the plaintiffs.

Thus, we find support in the evidence for the trial court's findings and conclusions as to everything except as previously indicated. The deed should be reformed to restrict access to the property except as to the 120 feet on the westerly side of the tract as shown by the exhibits and testimony and, agreeable to the manner in which access was provided when the highway was constructed by the defendant.

Plaintiffs-respondents made a motion to strike the bill of exceptions and maintain this to be grounds for dismissal of the appeal. The facts behind the motion to strike are these: Judgment for the plaintiffs was filed and entered April 3, 1964. On April 13, 1964, the defendant served and filed a motion for new trial and to amend findings of facts and conclusions of law and judgment. Hearing on the motion was set for April 21, 1964. On April 17, the court vacated the setting and continued the hearing without date. It was not until September 4, 1964, that the court reset the hearing. It was held September 14, and the motion was denied. Defendant's bill of exception was filed and served September 15 and settled on October 9, 1964.

The plaintiffs rely on R.C.M.1947, § 93-5606, and 93-5505. Section 93-5606 limits to thirty days the length of time by which a hearing on a motion for new trial can be continued. It further allows no longer than fifteen days after such hearing for the court to rule on the motion. Thus, the plaintiffs argue, the motion was deemed denied on June 5, 1964, or 45 days after the hearing was originally set. Section 93-5505 permits no more than 75 days after the denial of the motion for new trial, except upon an affidavit showing the necessity for further time to settle a bill of exceptions. No affidavit showing necessity for further time having been filed, it is the plaintiffs' position that section 93-5505 period expired around August 20, 1964. Thus, plaintiffs reason the district court lost jurisdiction terminating the cause.

We cannot accept the plaintiffs' contention in this matter. We are not here dealing solely with a motion for new trial as contemplated by section 93-5606 and 93-5505. Involved is a combined motion for new trial and to amend findings of fact and conclusions of law and judgment provided for in Rules 52(b) and 59(a), M.R.Civ.P., as in effect at the time of this hearing.

Rule 52(b) provided:

"Upon motion of a party made not later than 10 days after

service of notice of entry of judgment the court may amend its findings or make additional findings and may amend the judgment accordingly. The motion may be made with a motion for a new trial pursuant to Rule 59."

Rule 59(a) provides:

"Grounds. A new trial may be granted to all or any of the parties and on all or part of the issues for any of the reasons provided by the statutes of the State of Montana. On motion for a new trial in an action tried without a jury, the court may take additional testimony, amend the findings of fact and conclusions of law or make new findings and conclusions, set aside, vacate, modify or confirm any judgment that may have been entered or direct the entry of a new judgment."

Before its recent amendment a timely motion to amend findings could suspend appealability of the judgment until acted upon. Gaudiosi v. Mellon, (U.S.D.C. 3rd Cir. 1959) 269 F.2d 873, certiorari denied, 80 S. Ct. 211, 361 U.S. 902, 4 L. Ed.2d 157. It is the position of this court that the fact that the motion to amend was combined with a motion for new trial at that time did not alter the rule as to suspension of appealability. The trial court under the rule at that time in effect may well have found that it needed more than 45 days to hold a hearing, take additional testimony as provided for in Rule 59(a), and amend its findings and conclusion. Since the time limitations applicable to motions for new trial did not then apply to motions to amend findings of fact and conclusions of law and judgment, they could not be deemed to restrict the latter when the two were combined in good faith. This situation does not prevail today, as the amendments to the Rules provide that these motions must be heard and determined within the time limitations provided by section 93-5506.

The plaintiffs also suggest that the motion for new trial or to amend findings, etc., must be deemed to have been denied because no brief was filed in support thereof within the time prescribed by the rules of the district court of the

Sixth Judicial District. The rule (number three) provides that each failure is deemed an admission that, *"in the opinion of counsel"*, the motion is without merit. (Emphasis added.) This contention can be disposed of by reference to the language of this court in the recent case of Bollinger v. Jarrett, 146 Mont. 355, 406 P.2d 834, "The rule refers only to what the opinion of counsel is deemed to be. It does not in any way limit the freedom of the court to rule in accordance with its own opinion."

For the reasons herein stated, the matter is returned to the district court for modification of its findings and decree as indicated.

It is so ordered. Let remittitur issue, each party to pay its own costs.

MR. CHIEF JUSTICE JAMES T. HARRISON and MR. JUSTICES JOHN C. HARRISON, ADAIR and CASTLES concur.