428 A.2d 152

Bertram SHAFER and Dolores E. Shafer, his wife, Lawrence Douglas and Barbara Douglas, his wife, Michael E. Evans and Jacqueline Evans, his wife, Roy Kenneth Hess and Joanne S. Hess, his wife, Robert M. Suckling and Mary Lou Suckling, his wife, Edward Chambers and Helen Chambers, his wife, Raymond E. Scales and Miriam C. Scales, his wife, Estella Williams, Helen M. Soldomridge, Gladys S. Ryser, Rose E. Philips, Althea Jenkins, Patricia L. Fitzgerald, Harold Cooper, Thelma K. Jones, Margaret Finley and Joyce Cooper, Appellants at No. 653 Phila. 1980,

v.

A. I. T. S., INC., Cross-Appellant at No. 721 Phila. 1980.

Superior Court of Pennsylvania.

Argued Sept. 10, 1980.

Filed April 3, 1981.

Petition for Allowance of Appeal Denied Aug. 11, 1981.

Joel M. Scheer, Easton, for Shafer et al., appellants (at No. 653) and for appellees (at No. 721).

Joel H. Ziev, Easton, for A.I.T.S., Inc., appellant (at No. 721) and for appellee (at No. 653).

Before SPAETH, HESTER and CAVANAUGH, JJ.

SPAETH, Judge:

This case comes before us on cross-appeals. The action is in assumpsit, and is pleaded in seventeen counts. For our purposes, however, there are only two claims, the first represented by the first fifteen counts, the second, by the seventeenth count. (The sixteenth count is for a claim not brought before us by appeal.) On the first claim, the jury found for the defendant, and the plaintiffs have appealed, arguing that we should enter judgment n. o. v. or grant a new trial. This is Appeal No. 653. On the second claim, the lower court directed a verdict for the plaintiffs, and the defendants have appealed, arguing that we should enter judgment n. o. v. This is Appeal No. 721. We have decided that on Appeal No. 653, we should reverse and enter judgment n. o. v., and that on Appeal No. 721, we should affirm.

*Appeal No. 721*

The plaintiffs below are members, or relatives or friends of members, of the Order of the Eastern Star, Grand Chapter of Pennsylvania. The defendant below is a corporation that was in the travel business; it is sometimes designated in the record as American International Travel Service, other times as A.I.T.S., Inc.

In May 1975 representatives of the Order (Margaret M. Finley, Travel Chairman, and Joyce Cooper, Worthy Grand Matron) met with representatives of A.I.T.S. to discuss two trips planned by A.I.T.S.—one to the Canary Islands in November 1976, the other to the Caribbean in February 1977. The A.I.T.S. representatives promised to pay the Order a $20 commission for each person who took the trips. Two hundred and seventeen persons took the trip to the Canary Islands. A.I.T.S. acknowledged these facts, but it nevertheless refused to pay the Order the agreed upon $20 commission per person, or $4,340, on the ground that its agreement to pay the commission was illegal and unenforcible.[1] The seventeenth count of the complaint is a claim by two of the plaintiffs as assignees of the Order for this $4,340.

In refusing to pay the $4,340, A.I.T.S. relies on 14 C.F.R. 207.15, which provides:

(a) Neither a carrier nor a travel agent shall make any payments or extend gratuities of any kind, directly or indirectly, to any member of a chartering organization in relation either to air transportation or land tours or otherwise.

(b) Neither a carrier nor a travel agent shall make any donation to a chartering organization or an individual charter participant.

---

1. Plaintiffs argued to the lower court that this defense of illegality had been waived because it was not pleaded. *See* Pa.R.C.P. 1030 and 1032. However, illegality of contract is not waived by failure to plead it, since it goes to the very substance of the plaintiff's action. *See Norristown Ford Co. v. Metropolitan Auto Dealers, Inc.*, 183 Pa.Super. 645, 132 A.2d 725 (1957); 2 Goodrich-Amram 2d § 1030:1.3 pp. 288–291.

An agreement that cannot be performed without violation of a statute is illegal and will not be enforced. *Dippel v. Brunozzi*, 365 Pa. 264, 74 A.2d 112 (1950); *Pennsylvania R. Co. v. Cameron*, 280 Pa. 458, 466, 124 A.2d 638, 640 (1924); *Gramby, et al. v. Cobb*, 282 Pa.Super. 183, 422 A.2d 889 (1980). However, it must appear that the subject of the agreement is specifically proscribed by the statute. The agreement whereby A.I.T.S. was to pay the Order a commission based on the number of travelers is not the type of agreement prohibited by 14 C.F.R. 207.15. This regulation presumably was intended to further the efforts of the Civil Aeronautics Board, whose statutory duty is to "foster sound economic conditions, promote economic and efficient service at reasonable charges, and avoid destructive competitive prices," *Las Vegas Hacienda, Inc. v. C.A.B.*, 298 F.2d 430, 432–33, (9th Cir. 1962), *cert. denied*, 369 U.S. 885, 82 S.Ct. 1158, 8 L.Ed.2d 286; *see also Voyager 1000 v. Civil Aeronautics Board*, 489 F.2d 792 (7th Cir. 1973), *cert. denied*, 416 U.S. 982, 94 S.Ct. 2383, 40 L.Ed.2d 759 (1974), by preventing travel agents or air carriers from lowering the cost of air transportation by refunding the cost of airfare in the form of commissions to members of a charter organization. This does not appear to have been the intent or the result of the agreement here. Rather than reducing the cost to members of the Order, the commission was intended as compensation to the Order for the use of its membership list and other facilities. This was the finding of the lower court: "[S]uch payment could fairly be viewed as an arrangement for services under which the [Order] would use its facilities, mailing lists and membership rolls to contact its members and inform them of the trip, in return for which the [Order] would receive $20.00 for each participant." (Slip op. at 6)

We therefore conclude that the lower court was correct in directing a verdict in favor of the Order's assignees, and in denying A.I.T.S.'s motion for judgment n. o. v.

### Appeal No. 653

After the meeting in May 1975, between the representatives of the Order and A.I.T.S., A.I.T.S. sent Mrs. Finley a

letter giving a "detailed breakdown of the administrative and financial workings of the various AITS programs." (R.R. 341a) Included in the letter were the following promises:

 . . . .

2. A.I.T.S. will serve as your agent for all charter arrangements with the airline. Only the most modern airline equipment will be used.

 . . . .

4. A.I.T.S. will provide four color print brochures personalized to your association for distribution to your members via U.S. mails.

5. A.I.T.S. will assume the cost of all administrative expenses involved in the exposure of this promotion and including all costs of printing, postage and mailing.

 . . . .

8. A.I.T.S.'s central computer complex will confirm and maintain all reservations and issue a detailed invoice to each participant.

 . . . .

10. A.I.T.S. will guarantee that there will be no financial obligation on the part of your organization.

(R.R. 341a)

Pursuant to this letter, a brochure entitled "Carribbean Cruise Carnival" was provided by A.I.T.S. for distribution to members of the Order, "and their families and friends." (Exhibit "A" of the Complaint.) The brochure included a reservation form, to be sent to Mrs. Finley as Travel Chairman. The plaintiffs described in the first fifteen counts of the complaint sent in reservation forms, with their deposits. In response, A.I.T.S. sent them a letter acknowledging the reservations (Exhibit "B" of the complaint) and later, a bill for the balance of the cost of the trip (Exhibit "C" of the complaint). The plaintiffs paid as billed, in varying amounts.

Sometime in the Fall of 1976, A.I.T.S. decided to discontinue its travel business, and announced that it would not conduct trips scheduled for after December 9, 1976. Since the Caribbean cruise was scheduled for February 1977, it was affected by this announcement. A new organization, A.I.T.S., Travel, Inc., was formed by former executives and consultants of A.I.T.S., with the intention of handling all trips scheduled by A.I.T.S. after December 9, 1976. On January 20, 1977, the Order received a letter from the new corporation, A.I.T.S., Travel, Inc., stating that the Caribbean cruise had been cancelled (Exhibit "D" of the complaint). The claim made by the first fifteen counts of the complaint is to recover payments by the plaintiffs to A.I.T.S. for the cancelled cruise. As indicated above, the payments vary in amount. For example, the plaintiffs on the first count seek to recover $2,376, on the second count, $958, and so on. A witness for A.I.T.S. testified that payments received before October 29, 1976, had been refunded, but payments received after October 29, 1976, were turned over to the new corporation, A.I.T.S., Travel, Inc. The claim here is for payments made after October 29, 1976, and not refunded. These total $10,532.

A.I.T.S. has resisted this claim on the following theory: Before the trip took place, A.I.T.S., Inc. sold part of its business to another corporation [A.I.T.S., Travel, Inc.], renounced its principal-agency relationship by giving notice to the principal [the Order] and forwarded all funds to its successor [A.I.T.S., Travel, Inc.]. The successor agency failed to perform and the trip never occurred. Thereafter, [A.I.T.S.] refunded all money it had, but for funds received by it after the renunciation.

(Brief for A.I.T.S., at 5.)

In other words, according to A.I.T.S. the plaintiffs must get their money back, if at all, not from it but from A.I.T.S., Travel, Inc.

■ We find no merit in this theory. It depends upon the premise that in fact A.I.T.S. did "renounce[ ] its principal-agency relationship by giving notice to [the Order as the

principal]." There was, however, no evidence from which the jury could find that such a renunciation had occurred. The lower court, therefore, should not have submitted the case to the jury, but should have directed it to return a verdict for the plaintiffs. When the jury returned a verdict in favor of A.I.T.S., the court should have entered judgment n. o. v.

It is settled that the burden of proving renunciation of one's obligations rests on the party asserting it. *Yoder v. T. F. Scholes, Inc.*, 404 Pa. 242, 173 A.2d 120 (1961); *Taylor v. Stanley Co. of America*, 305 Pa. 546, 158 A. 157 (1932). In the present case, A.I.T.S. therefore had the burden of proving that it had communicated its intention not to perform its obligation to provide the Caribbean cruise. To be effective, a renunciation must be absolute and unequivocal. *See McCloskey v. Minweld Steel Co.*, 220 F.2d 101 (3rd Cir. 1955); *McClelland v. New Amsterdam Casualty Co.*, 322 Pa. 429, 185 A. 198 (1936). Viewing the evidence in the light most favorable to A.I.T.S. as the verdict winner, we find it insufficient to prove a renunciation.

Arthur Waltzman, co-chairman of the board and treasurer of A.I.T.S., testified that on December 10, 1976, A.I.T.S. mailed letters to all customers and creditors, which stated:

> AITS, Inc. has discontinued its travel business operations as of December 9, 1976. These operations have been taken over by AITS Travel, Inc., a new corporation having no relationship whatsoever with us. All travel tours heretofore planned by us for operation subsequent to December 9, 1976 and with respect to which we may have heretofore entered commitments are being assumed by AITS Travel, Inc.

(Cross-Appellant's Brief at 19, Exhibit "2")

No attempt was made to prove that this letter was sent to the plaintiffs. When asked whether the letter was sent to the Order, Mr. Waltzman replied, on direct examination, as follows:

> Q: Excuse me. Was that notice sent to the Order of the Eastern Star?

A: Yes, it was.

Q: How do you know that?

A: Because I checked the tape to see if their name was on the tape and the listings of all the groups that we sent it to, and I know that there were groups on that tape that had received the notice, and this tape ran all the way through, *so I have to assume—I don't know specifically that it was*—it was made to the Order of the Eastern Star. Who received it I cannot tell you.

(R.R. 115a, emphasis added.)

 Evidence that a letter has been mailed will ordinarily be sufficient to permit a jury to find that the letter was in fact received by the party to whom it was addressed. *Berkowitz v. Mayflower Securities, Inc.*, 455 Pa. 531, 534, 317 A.2d 584 (1974). *Christie v. Open Pantry Marts, Inc.*, 237 Pa.Super. 243, 352 A.2d 165 (1975). There must, however, be proof that the letter was signed in the usual course of business and placed in the regular place of mailing. *Christie v. Open Pantry Marts, Inc., supra*, 237 Pa.Super. at 246–47, 352 A.2d at 166, *citing* McCormick on Evidence, § 195 at 464 (2d ed. 1972); Fed.R.Evid. 406. In the present case, A.I.T.S. has failed to satisfy this threshold requirement. Mr. Waltzman's testimony that the name of the Order "was on the tape . . . and this tape ran all the way through" was, without any further evidence, insufficient to show that a letter to the Order was actually written, signed, and placed in the regular place for mailing.

The only other evidence offered by A.I.T.S. in support of its claim of renunciation was the testimony of Mrs. Finley, the Order's Travel Chairman, who stated on cross-examination that Stanley Rosen, an A.I.T.S. representative with whom she had communicated during the planning of several prior trips, told her in a telephone conversation that "he was taking over A.I.T.S." This did not amount to an admission by Mrs. Finley that A.I.T.S. had renounced its responsibility to provide the Caribbean cruise. Mrs. Finley also testified that Mr. Rosen did not inform her that another corporation

had been formed to handle the Caribbean cruise. Also, she testified, "I asked him if it [Rosen's taking over of A.I.T.S.] would affect our trip in any way. He said no, it would not." (R.R. 67a)

On Appeal No. 721, the order of the lower court is affirmed. On Appeal No. 653, the order of the lower court is reversed and the case remanded with instructions to enter judgment n. o. v.

CAVANAUGH, J., concurs in the result.