Clifford **LITSTER, Plaintiff and Appellant,**

v.

**UTAH VALLEY COMMUNITY COLLEGE, Defendant and Appellee.**

No. 930634–CA.

Court of Appeals of Utah.

Sept. 1, 1994.

Denver C. Snuffer, Jr. (argued), Maddox, Nelson, Snuffer & Dahle, Murray, for appellant.

Jan Graham, Atty. Gen., and Elizabeth King, Asst. Atty. Gen., Salt Lake City, for appellee.

Before BENCH, BILLINGS, and ORME, JJ.

## OPINION

BILLINGS, Presiding Judge:

Plaintiff Clifford Litster appeals from a summary judgment entered in favor of defendant Utah Valley Community College (UVCC) on the basis that he failed to comply with the notice provisions of the Utah Governmental Immunity Act (the Act). We affirm.

## FACTS

Litster was a student enrolled in the lineman program at UVCC, a governmental entity.[1] On December 11, 1990, while practicing power line construction and maintenance techniques in his lineman class, Litster scaled a damaged power pole and fell, sustaining severe injuries.

On October 24, 1991, Litster filed a notice of claim with UVCC, pursuant to the notice provisions of the Act, Utah Code Ann. §§ 63–30–11 and –12 (1993). On January 24 of the following year, he filed a complaint alleging

---

1. *See* Utah Code Ann. § 63–30–2(3), (9) (1993).

UVCC was liable for the injuries he sustained while in training in the lineman program. UVCC answered Litster's subsequently filed amended complaint on April 15, 1992, and asserted, among other affirmative defenses, that Litster's cause of action was barred by his failure to file notice of claim with the attorney general, as required by the Act. UVCC simultaneously filed a motion for summary judgment supported by an affidavit from the lead secretary for the Litigation Division of the Utah Attorney General's office, who maintains under her custody and control all notices of claim received by that office. She stated: "[N]o notice of claim to the Attorney General from or on behalf of Clifford Litster has been received by the Utah Attorney General's Office." Attached to UVCC's motion was a photocopy of the two-page, typewritten letter giving UVCC notice of Litster's claim. The letter is dated October 24, 1991, addressed to "Utah Valley Community College, 800 West 1200 South, Orem, UT," and is signed by Denver C. Snuffer, Jr., Litster's attorney.

. Litster responded to UVCC's motion by arguing that a material issue of fact existed regarding whether he sent notice of claim to the attorney general and, therefore, summary judgment was inappropriate. He offered the supporting affidavit of Mr. Snuffer, which provided:

1. It is the official office procedure of Maddox, Nelson, Snuffer & Dahle to properly notify the Utah Attorney General's Office pursuant to the Utah Government Immunity Act when pursuing a claim against the state of Utah or any of it's [sic] agencies.

2. On October 24, 1991, I sent a Notice of Claim Under the Government Immunity Act to Utah Valley Community College, 800 West 1200 South, Orem, Utah.

3. The official firm[-]maintained office file for this matter contains my handwritten direction to my secretary that the Notice of Claim be mailed to the Utah Attorney General. (Copy attached)

4. It is the policy of my office that when direction is given to send notices, that direction is followed.

5. I have no doubts that notice was in fact sent in this case to the Attorney General's office as required by statute.

UVCC's reply, captioned "Motion to Strike Affidavit of Attorney Snuffer," asserted that Mr. Snuffer's affidavit was "immaterial to the issue before the court" and should thus be stricken pursuant to Rule 12(f) of the Utah Rules of Civil Procedure. In its memorandum supporting the motion, UVCC stated:

Plaintiff's counsel, Denver Snuffer, suggests in his affidavit that since he told his secretary to send a notice, and since his secretary is required by office policy to do what she is told, the notice of claim must have been sent.

This argument is immaterial. A notice is deemed served on the government as of "the date shown by the post office cancellation mark" on the envelope or as of the date of mailing. Utah Code Ann. § 63–37–1. In this case, there is no evidence concerning the postmark or the date of mailing. There is nothing from counsel or his secretary that states that a notice was in fact mailed. It is not sufficient for counsel simply to state that his office's policy is to mail notices. Counsel does nothing but speculate when he opines "I have no doubts that notice was in fact sent in this case to the Attorney General's office as required by statute." A fact issue cannot be created by mere testimony that notices are generally filed. There must be evidence of mailing. There being no fact issue, the motion for summary judgment should be granted.

Litster replied to UVCC's motion to strike Snuffer's affidavit, pointing out:

Rule 406 of the Utah Rules of Evidence permits the introduction of evidence of the "habit" of a person or of the "routine practice" of an organization to prove that the conduct of a person or organization on a particular occasion was in conformance with the habit or routine practice. There is a dispute whether notice was mailed to the Attorney General's office. The Affidavit that is the subject of the Defendant's motion introduces evidence that is permitted under Rule 406 of the Utah Rules of Evidence.... While a postmark is one

form of evidence of mailing, that does not prevent other forms of evidence from being admitted. Nor does it negate the provisions of Rule 406 of the Utah Rules of Evidence.

UVCC filed a final responsive memorandum June 23, 1992. In the memorandum UVCC noted that, pursuant to section 63–37–1 of the Utah Code, "a document is deemed filed with a state agency on the date . . . 'it is mailed if the sender established by competent evidence that the . . . document was deposited in the United States mail on or before the date for filing. Utah Code Ann. § 63–37–1.' " UVCC then argued that Mr. Snuffer's affidavit should be stricken because "the statements it contains are legally insufficient" to create an issue of fact, and thus the affidavit is immaterial. Specifically, UVCC contended:

> In order to make an adequate showing of a practice of mailing, there must be more than conclusory statements about office practice. Moreover, proof that a document was prepared and that instructions were give[n] to mail it does not alone establish mailing custom. To prove mailing custom, there must be evidence that shows a practice of collecting documents, of placing and sealing them in addressed stamped envelopes, and of collecting outgoing mail in the office and placing it in the mail box.
>
> In the present case, the affidavit of counsel contains a conclusory statement that there is a practice of mailing notices of claim and a statement that he instructed his secretary to mail a notice. This evidence is not legally sufficient under the above authority. There is nothing to show a practice of collecting documents, placing them in stamped addressed envelopes, and collecting the envelopes and placing them in an outgoing mail receptacle. Since the

affidavit contains evidence that is legally insufficient to create an issue of fact, the affidavit should be stricken.

The following day, June 24, 1992, UVCC filed a notice to submit for decision. Approximately three weeks later, on July 13, 1992, Litster responded to UVCC's June 23 memorandum, stating:

> The challenge to the Affidavit of Attorney Snuffer focuses upon the sufficiency of the content of the Affidavit. In light of the comments and objections of the Defendant, supplemental information is being provided in a supplemental Affidavit attached to this reply.

In this supplemental affidavit, Mr. Snuffer stated:

> 2. On or about November 25, 1991 I gave instructions to my secretary to mail notice of the claim of Clifford Litster to the Attorney General's Office for the State of Utah.
>
> 3. It is the practice of my secretary to comply with instructions on the day or the day after the instruction is given.
>
> 4. It is the practice of my secretary to take the notice and place it in an envelope with postage prepaid thereon and to deposit that in a United States Post Office Box located in my building. It is the practice of the United States Post Office to pick up the mail from that Post Office Box at approximately 5:30 to 6:00 p.m. each evening at my office.
>
> 5. It is my understanding and my belief that the practice of my office was followed in the present case and that in fact notice was copied, placed in a postage prepaid envelope, addressed to the Utah State Attorney General's Office, and mailed on November 25 or November 26, 1991.[2]

---

2. The dissent correctly points out that UVCC did not interpose any objection to Mr. Snuffer's second affidavit. However, the dissent's conclusion that UVCC therefore waived its right to challenge the legal sufficiency of the second affidavit's contents does not follow. A party's failure to object to the evidentiary sufficiency of an affidavit results in the party waiving the right to object to the admitted evidence on appeal. *See D & L Supply v. Saurini*, 775 P.2d 420, 421 (Utah 1989); *Hobelman Motors, Inc. v. Allred*, 685 P.2d 544,

546 (Utah 1984); *Franklin Fin. v. New Empire Dev. Co.*, 659 P.2d 1040, 1044 (Utah 1983). However, UVCC at no point objects that Mr. Snuffer's first affidavit was deficient from an *evidentiary standpoint*, i.e., that it was not made on personal knowledge, that did not set forth facts as would be admissible in evidence, or that it did not show affirmatively that the affiant was competent to testify to the matters stated therein. *See* Utah R.Civ.P. 56(e). Rather, UVCC claimed before the trial court that Mr. Snuffer's first

The trial court granted UVCC's motion for summary judgment on April 9, 1993. In its ruling, the court referenced the evidence contained in Snuffer's "two affidavits," focusing specifically on paragraphs (2) and (3) of the second affidavit, in which Snuffer states the date upon which he gave direction to his secretary to mail the notice, and the date upon which she would have mailed it had she acted in conformance with the firm's office practice. The court, relying on section 63–37–1, framed the issue as "whether counsel's affidavit is 'competent evidence' for purposes of deeming the notice of claim filed." In finding they were not, the court stated:

> The affidavits of counsel contain general statements of the office[']s practice to properly notify the Utah Attorney General's Office and statements about the practice of his secretary. This Court recognizes that evidence of habit and/or business practice can be evidence that a person or business acted in conformity with that habit or practice. Yet this Court determines that the affidavits submitted do not establish with competent evidence that this is in fact what occurred.

Accordingly, the court granted UVCC's motion for summary judgment. Litster appeals.

### STANDARD OF REVIEW

Summary judgment is properly granted if there are no genuine issues as to any material fact and if the moving party is entitled to judgment as a matter of law. Utah R. Civ.P. 56(c); *Hunsaker v. State*, 870 P.2d 893, 896 (Utah 1993). "In determining whether the trial court properly found there were no genuine material issues of fact, we review the facts in the light most favorable to the losing party, while giving no deference to the trial court's legal conclusions." *ProMark Group, Inc. v. Harris Corp.*, 860 P.2d 964, 966 (Utah App.1993); *accord Projects Unlimited, Inc. v. Copper State Thrift & Loan Co.*, 798 P.2d 738, 743 (Utah 1990).

### NOTICE REQUIREMENTS OF THE UTAH GOVERNMENTAL IMMUNITY ACT

Persons with claims against a government agency must comply with the notice requirements of the Act.[3] *Madsen v. Borthick*, 769 P.2d 245, 249–50 (Utah 1988); *Lamarr v. Utah State Dep't of Transp.*, 828 P.2d 535, 540–41 (Utah App.1992). Section 63–30–11(2) of the Act sets forth the general requirement that any person having a claim for injury file written notice of that claim:

> *Any person having a claim* for injury against a governmental entity, or against an employee for an act or omission occurring during the performance of his [or her] duties, within the scope of employment, or under color of authority shall file a written notice of claim with the entity before maintaining an action, regardless of whether or not the function giving rise to the claim is characterized as governmental.

Utah Code Ann. § 63–30–11(2) (1993) (emphasis added). Section 63–30–11(3) specifies the required contents of the notice of claim

---

affidavit was deficient from a *legal standpoint*, i.e., that the evidence it contained was immaterial to the issue before the court on summary judgment. Technically, UVCC need not have made this objection: UVCC's motion for summary judgment alone required the trial court to address whether any affidavits submitted in opposition to the motion were "material," i.e., whether they contained evidence creating the genuine issue of material fact needed to defeat summary judgment. Perhaps UVCC's "motion to strike" could more accurately have been characterized as a memorandum in opposition to Snuffer's affidavit. However, "in determining the character of a motion, the substance of the motion, not its caption, is controlling." *State v. Parker*, 872 P.2d 1041, 1044 (Utah App.1994); *accord Allred v. Allred*, 835 P.2d 974, 977 (Utah App.1992). We thus conclude that the "motion

to strike" was not procedurally necessary to preserve for appeal the issue of whether Snuffer's first affidavit created a genuine issue of material fact.

Likewise, UVCC did not waive its right to object to the legal sufficiency of Mr. Snuffer's second affidavit. The issue of whether Mr. Snuffer's second affidavit created a genuine issue of material fact was squarely before the trial court by dint of UVCC's motion for summary judgment alone. Thus, UVCC was not required to file any documents opposing the affidavit in order to put the question properly before this court on appeal.

3. The Utah Governmental Immunity Act governs the procedure for suing the State of Utah and its agencies. *See* Utah Code Ann. §§ 63–30–1 to –38 (1993).

and to whom it must be sent. Germane to the present controversy is subsection (3)(b)(ii), which provides:

The notice of claim shall be:

....

directed and delivered to the responsible governmental entity *according to the requirements of Section 63–30–12 or 63–30–13.*

*Id.* § 63–30–11(3)(b)(ii) (emphasis added). Section 63–30–12 then specifies the entities with whom notice must be filed and the time period for filing notice:

A claim against the state ... is barred unless notice of claim is filed with the attorney general and the agency concerned within one year after the claim arises.

*Id.* § 63–30–12.

█ Litster first argues that the notice requirements set forth in these sections of the Act have been met. He concedes that under the Act's provisions a notice of claim must be filed with the attorney general, but claims that section 63–30–12 does not specify by whom the notice must be filed. Because UVCC sent the attorney general a copy of Litster's notice of claim, Litster argues, a notice of claim was filed with the attorney general. The fatal flaw in Litster's argument is that he has failed to read sections 63–30–11 and –12 together, as the statutory scheme clearly requires. Section 63–30–11, which sets forth the general requirements regarding notice of claim, specifies that "[a]ny person having a claim for injury against a governmental entity" must file notice of claim. *Id.* § 63–30–11(2). This section explicitly requires that the person making the claim file the requisite notice. Subsection (3)(b)(ii) then directs claimants to section 63–30–12, which outlines the manner in which the claims are to be directed and delivered and specifies that claims against the state are barred "unless notice of claim is filed with the attorney general and the agency concerned within one year after the claim arises." *Id.* § 63–30–12.

This reading of section 63–30–12 is consistent with our recent opinion, *Lamarr v. Utah State Department of Transportation,* 828 P.2d 535 (Utah App.1992). Closely parallel-ing the present factual circumstances, the plaintiff in *Lamarr* brought suit against the Utah State Department of Transportation (UDOT), filing notice of claim with UDOT, but not with the attorney general. We held that, regardless of the attorney general's actual notice of the plaintiff's claims, his failure to comply with the notice provisions of the Act "depriv[ed] the trial court of jurisdiction over Lamarr's claims against UDOT." *Id.* at 542. We stated specifically that "section 63–30–12 required *Lamarr* to serve written notice of his claim on both UDOT and the attorney general." *Id.* (emphasis added). Thus, for Litster's claim to survive summary judgment, he must demonstrate that *he* filed a notice of claim with the attorney general.

## COMPETENT EVIDENCE OF FILING NOTICE OF CLAIM

Litster next contends that Snuffer's affidavits raise a genuine issue of material fact as to whether he filed notice of claim with the attorney general. Section 63–37–1(2) sets forth the law governing documents that are allegedly mailed, but which the state or political subdivision does not receive. The section delineates a two-step process by which receipt can be established:

[The document] shall be deemed filed or made and received on the date it was mailed if the sender establishes by competent evidence that the report, claim, tax return, statement or other document or payment was deposited in the United States mail on or before the date for filing or paying; *and* ... the sender files with the state or political subdivision a duplicate within thirty days after written notification is given to the sender by the state or political subdivisions of its nonreceipt of such report, tax return, statement, or other document.

Utah Code Ann. § 63–37–1(2) (1993) (emphasis added). The State does not claim that Litster failed to file a duplicate within thirty days, which is the second prong of the process. The State's only claim is that Litster did not comply with the first prong of the process. We therefore address the sole issue of whether Litster "establishe[d] by competent evidence" that he deposited a letter

notifying the attorney general's office of his claim in the United States mail within one year after the claim arose (December 11, 1991).

### A. Admissibility of Office Mailing Custom

Litster asserts that Snuffer's affidavits provide competent evidence that timely notice of claim was filed with the attorney general. He relies on Rule 406 of the Utah Rules of Evidence as authority for the proposition that evidence of the routine mailing practices of an organization is sufficient to establish mailing on a particular occasion.

Unfortunately, Litster's argument misses the substance of the trial court's ruling and the issue before us on appeal. The trial court ruled that the office custom evidence contained in Snuffer's affidavits did not provide "competent evidence" that notice of claim was mailed to the attorney general. Rule 406 does not address this issue: the rule addresses whether office custom evidence is *admissible*,[4] not whether it is *sufficient*, to establish the occurrence of a particular mailing. *See Kaiser Aluminum v. Department of Labor & Indus.*, 57 Wash.App. 886, 790 P.2d 1254, 1257 (1990) (stating

Washington's Rule 406 addresses only admissibility of habit and custom evidence and thus does not affect Washington's common law standard regarding sufficiency of office custom evidence to raise presumption of mailing); *see also Swink & Co. v. Carroll McEntee & McGinley, Inc.*, 266 Ark. 279, 584 S.W.2d 393, 399–400 (1979) (stating Arkansas's Rule 406 "governs the admissibility of [custom] evidence on the subject [of whether mailing occurred]"). Though evidence may be admissible under Rule 406, it must still be sufficient to show an alleged mailing occurred.

Thus Rule 406, which may have authorized the admission of the office custom evidence contained in Snuffer's affidavits, only gets the evidence before the court. In order for the evidence to then "establish[ ] by competent evidence that the [notice of claim] was deposited in the United States mail on or before the date for filing," Utah Code Ann. § 63–37–1(2) (1993), it must, in the posture of summary judgment, be sufficient to give rise to an inference that the alleged mailing occurred.[5]

The common law governs the issue of whether office mailing custom evidence is

---

**4.** Courts have long recognized that modern business practices make direct proof of mailing impractical and have thus acknowledged the validity of alternate means of establishing proof of mailing by office custom. *See, e.g., First Nat'l Bank v. Mid–Century Ins. Co.*, 559 S.W.2d 50, 52 (Mo.Ct.App.1977) ("[I]t has been recognized that, in large offices which handle a volume of mail, direct proof with respect to a particular letter is impractical. The courts have held that proof of 'settled custom and usage of [the sender's] office, regularly and systematically followed in the transaction of its business' may, in such cases, suffice.") (quoting *Armour & Co. v. American Auto. Ins. Co.*, 336 Mo. 551, 80 S.W.2d 685 (1935)); *Farrow v. Dep't of Labor & Indus.*, 179 Wash. 453, 38 P.2d 240, 241 (1934) ("[I]n an office handling as much correspondence as does the Department of Labor and Industries, no one can remember the fact of mailing any particular notice or letter. So the law has become well established in such instances that proof of mailing may be made by showing ... an office custom with respect to mailing.").

**5.** It is not enough, as the dissent asserts, for the evidence to meet the evidentiary requirements governing affidavits submitted in support or opposition to motions for summary judgment under Rule 56(e) of the Utah Rules of Civil Procedure. The dissent finds "unpersuasive" our distinguish-

ing between "competent evidence" for purposes of § 63–37–1 of the Utah Code and "evidentiary defects" contemplated by Rule 56(e) of the Utah Rules of Civil Procedure. "After all," the dissent claims, "competency is one of the matters specifically dealt with in Rule 56." Aside from the fact that Rule 56(e) does *not* deal with competency, other than the competency of the affiant to testify, the problem with this assertion is that it merges two analytically distinct concepts. Rule 56(e), on the one hand, relates to whether evidence contained in an affidavit supporting or opposing summary judgment will be considered by the trial court; § 63–37–1, on the other hand, relates to whether evidence, properly admitted and considered by the trial court, is sufficient to defeat a summary judgment motion. Rule 56(e) requires that affidavits supporting or opposing summary judgment (1) be made on personal knowledge, (2) set forth facts that would be admissible in evidence, and (3) show that the affiant is competent to testify to the matters stated. Utah R.Civ.P. 56(e). An affidavit defective in one of these regards may, on proper motion, be stricken from the record. If stricken, the affidavit will not be considered by the trial court in its summary judgment ruling. We have a situation, however, in which the state does not argue that Snuffer's affidavits are defective in any of these ways (indeed, its motion to strike was brought pursuant to Rule 12(f), not Rule 56(e), of the

sufficient to raise an inference that an alleged mailing occurred. Although this is an issue of first impression in Utah, courts in other jurisdictions have held that an inference of mailing arises when the evidence proffered (1) establishes an office mailing custom, and (2) gives rise to the inference that the particular mailing in question occurred pursuant to the established custom. *See* John P. Ludington, Annotation, *Proof of Mailing by Evidence of Business or Office Custom,* 45 A.L.R. 4th 476, 481–82 (1986).

### B. Establishing Office Mailing Custom: The Preparation Phase

■ Two phases comprise an office mailing custom: the threshold phase in which the document in question is prepared, and the subsequent phase in which the document in question is mailed. Courts, while holding habit or custom evidence sufficient to establish the subsequent phase, have uniformly required that the preparation phase be established by direct evidence. In *Public Finance Co. v. Van Blaricome,* 324 N.W.2d 716 (Iowa 1982), the court held the testimony of a credit manager "that standard office procedure was for his cashier to pick up all mail in the outgoing box and drop it in the local post office box just prior to five o'clock each evening" was "sufficient . . . to raise a presumption that the notices of default were mailed." *Id.* at 721. However, the court was careful to note that the credit manager "testified he *personally* put default notices to [the defendants] in the office outgoing mail box." *Id.* (emphasis added). Similarly, in *Jimmy Swaggart Ministries v. Arlington,* 718 S.W.2d 83 (Tex.Ct.App.1986), the court stated: "If no direct evidence shows a person mailed the letter in question, an inference of mailing may be raised by showing the customary mailing practice in connection with the sender's address." *Id.* at 86. Again, however, direct testimony of *preparation* triggered the presumption:

> Here, the court clerk's testimony raised the presumption of mailing and receipt

when she stated she *personally prepared the docket notices and properly addressed them* to Jones, Day. Although there was no direct evidence of actual mailing, her description of the customary mailing procedure in the district clerk's office, whereby the dockets were stuffed in envelopes and mailed out, *and her preparation of the address label* for Jones, Day, allowed the presumption of mailing and receipt to arise.

*Id.* (emphasis added).

Likewise, in *Shafer v. A.I.T.S., Inc.,* 285 Pa.Super. 490, 428 A.2d 152 (1981), the Pennsylvania Superior Court overturned a jury verdict in favor of the purported sender of a letter in which the sender renounced its contractual obligations. *Id.* 428 A.2d at 154. The only evidence supporting the preparation of the letter of renunciation was testimony concerning a tape that contained the dictated letter. *Id.* 428 A.2d at 156. The court, stating that there must "be proof that the letter was signed in the usual course of business and placed in the regular place of mailing," *id.,* held that the purported sender had

> failed to satisfy this threshold requirement. [The purported sender's] testimony that the name of [the purported recipient] 'was on the tape . . . and this tape ran all the way through' was, without any further evidence, insufficient to show that a letter to [the purported recipient] was *actually written, signed, and placed in the regular place for mailing.*

*Id.* (emphasis added). Finally, the court in *Southern Region Industrial Realty, Inc. v. Chattanooga Warehouse and Cold Storage Co.,* 612 S.W.2d 162 (Tenn.Ct.App.1980), held: "[A] presumption that a letter was mailed may arise from the testimony of an officer of a corporation that *he dictated and signed the letter and placed it in the regular course for mailing.*" *Id.* at 164 (emphasis added).

Thus, courts have been uniform in requiring that the preparation phase of an office mailing practice be established by direct evi-

---

Utah Rules of Civil Procedure, on the ground that the affidavit was "immaterial to the issue before the court"). Rather, the state waived any objection it may have made to the admissibility of Snuffer's affidavits based on Rule 56(e); the court addressed the substance of the affidavits,

and held that the evidence presented was not sufficient to raise an inference that Litster's notice of claim was mailed. In this situation, we fail to see the relevance of Rule 56(e): it is the legal sufficiency of Snuffer's affidavits that is in question, not their admissibility.

dence. *See also Boman v. State Farm Mut. Auto. Ins. Co.*, 505 So.2d 445, 450 (Fla.Dist. Ct.App.), *review denied*, 509 So.2d 1119 (Fla. 1987) (holding evidence insufficient to establish as matter of law that notice was mailed in absence of evidence by any witness having personal knowledge that notice was prepared); *Commonwealth Edison Co. v. Property Tax Appeal Bd.*, 86 Ill.App.3d 414, 41 Ill.Dec. 590, 590–91, 407 N.E.2d 1088, 1089–90 (1980) (holding secretary's testimony that she prepared notice in question and that mail clerk collected it from her outbox, plus evidence outlining mail clerk's practice, sufficient to establish mailing); *Crissey v. State Highway Comm'n*, 147 Mont. 374, 413 P.2d 308, 311–12 (1966) (holding evidence sufficient to establish mailing when district engineer testified he signed letter and placed it in outbox and evidence established office practice as to mailing letters).

■ Litster's proffered evidence fails to establish the existence of an adequate office mailing custom at the threshold level. He provides no direct evidence that the notice of

6. Once direct evidence is provided as to the preparation of the document at issue, the second phase of the office custom must be shown. The second phase pertains to the office procedure by which documents placed in the outbox are delivered into the custody of the United States Postal Service. Evidence proffered to establish this phase of the office custom need not be direct, i.e., it need not show that collection and deposit of the particular document in question took place. However, it must outline in detail the office procedure once documents are collected from the outbox. Conclusory evidence regarding this phase of the procedure, such as testimony that a letter went out in the normal course of business, is not sufficient. *See Leasing Assoc., Inc. v. Slaughter & Son, Inc.*, 450 F.2d 174, 178–80 (8th Cir.1971) (holding executive's testimony that letter he dictated, signed, and placed in outbox "went out in the normal course of business" did not outline office mailing custom sufficiently to raise presumption of mailing).

Courts are divided on the question of whether testimony from the employee directly responsible for effecting the second phase of the office custom is required. Some courts have held that it is. *See, e.g., United Bank of Denver v. Don*, 527 P.2d 1184, 1186 (Colo.Ct.App.1974); *Harris v. Georgia–Pacific Corp.*, 395 So.2d 856, 858 (La.Ct. App.1981); *Kaiser Aluminum*, 790 P.2d at 1257. Other courts have held that the testimony of a witness familiar with this latter part of the mailing procedure is sufficient. *See, e.g., Swink &*

claim allegedly mailed to the attorney general was ever prepared.[6] Mr. Snuffer does not state that he dictated a letter addressed to the attorney general, signed it, or gave it to his secretary. Nor do we have an affidavit from Mr. Snuffer's secretary that she typed a notice addressed to the attorney general. We do not even have direct evidence that Mr. Snuffer's secretary photocopied the letter addressed to UVCC or placed it in an envelope addressed to the attorney general. In short, we have no direct evidence whatsoever pertaining to the preparation of the letter Mr. Snuffer's office claimed to have mailed to the attorney general. Consequently, viewed in a light most favorable to Litster's claim, Mr. Snuffer's affidavits are insufficient to establish a material issue of fact as to whether a notice of claim was mailed to the attorney general.[7]

CONCLUSION

Litster was unable to show that he complied with the notice provisions of the Utah Governmental Immunity Act. Litster's attempt to avoid summary judgment fails be-

*Co.*, 584 S.W.2d at 400; *Boman*, 505 So.2d at 450; *Van Blaricome*, 324 N.W.2d at 721.

We note that Litster does not provide an affidavit from Mr. Snuffer's secretary, the person directly responsible for the second phase of the office mailing procedure. However, we need not decide whether her affidavit would be required because we find Mr. Litster's evidence insufficient on other grounds.

7. Because we hold that Litster's proffered evidence is not sufficient to establish the existence of an adequate office mailing custom, we do not reach the third prong of the inquiry: whether Litster submitted sufficient evidence to raise an inference that, pursuant to the established custom, the particular mailing in question occurred. Once the custom evidence is found to be admissible, and an office mailing custom is sufficiently established, courts differ as to whether this evidence is alone sufficient to raise an inference that a particular mailing took place, or whether corroborating evidence is necessary.

Several courts have adopted a more liberal standard, holding that uncorroborated office custom evidence is sufficient to support a fact-finder's inference, or even to raise a rebuttable presumption, that the contested mailing occurred. *See, e.g., Swink & Co.*, 584 S.W.2d at 400; *Wiley v. Bank of Fountain Valley*, 632 P.2d 282, 286 (Colo.Ct.App.1981); *Van Blaricome*, 324 N.W.2d at 721; *Crissey*, 413 P.2d at 312; *Southern Region*, 612 S.W.2d at 164. Likewise, several

cause he has provided no competent evidence that the document claimed to have been mailed was prepared. He therefore fails to raise a material issue of fact as to whether his notice of claim was mailed to the attorney general. Consequently, we affirm the trial court's summary judgment in favor of UVCC.

BENCH, J., concurs in result only.

ORME, Associate Presiding Judge (dissenting):

I dissent. I believe UVCC waived whatever objections it had to Snuffer's second affidavit when, unlike with respect to the first affidavit, it did not move to strike, or otherwise object to, the later affidavit.

Rule 56 of the Utah Rules of Civil Procedure provides that affidavits filed in connection with summary judgment motions "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Utah R.Civ.P. 56(e). However, Utah case law has uniformly required that a party who sees deficiencies in a Rule 56 affidavit move to strike the affidavit or object to it in some equivalent way; otherwise, any objection is waived and the averments of the affidavit are properly before the court.[1] *See, e.g., D & L Supply v. Saurini,* 775 P.2d 420, 421 (Utah 1989); *Hobelman Motors, Inc. v. Allred,* 685 P.2d 544, 546 (Utah 1984); *Franklin Fin. v. New Empire Dev. Co.,* 659 P.2d 1040, 1043–44 (Utah

1983); *Strange v. Ostlund,* 594 P.2d 877, 880 (Utah 1979); *Howick v. Bank of Salt Lake,* 28 Utah 2d 64, 498 P.2d 352, 353–54 (1972); *Fox v. Allstate Ins. Co.,* 22 Utah 2d 383, 453 P.2d 701, 702–03 (1969); *Salt Lake City Corp. v. James Constructors, Inc.,* 761 P.2d 42, 46 (Utah App.1988). Such deficiencies can be as technical (but basic) as the failure to have an affidavit notarized; if objection is not interposed before the trial court, it is waived. *See Hobelman Motors,* 685 P.2d at 546. But such deficiencies are not limited to matters of form. As stated by the Utah Supreme Court, "if, on a motion for summary judgment, an opposing party fails to move to strike defective affidavits, he is deemed to have waived his opposition to *whatever evidentiary defects* may exist." *Franklin Fin.,* 659 P.2d at 1044· (emphasis added). I find unpersuasive the main opinion's effort to treat questions of the *competency* of evidence for purposes of the mailing statute, Utah Code Ann. § 63–37–1 (1993), as somehow different from "evidentiary defects" contemplated by Rule 56. After all, competency is one of the matters specifically dealt with in Rule 56. *See* Utah R.Civ.P. 56(e) ("Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein.").

In this case, the fair import of Snuffer's second affidavit is that plaintiff's notice of claim was prepared on November 25 or 26,

courts have adopted a stricter standard, holding that evidence of mailing custom, without corroborating evidence that the custom was followed on the occasion in question, is insufficient to support the inference that the contested mailing took place. *See, e.g., Simpson v. Jefferson Standard Life Ins. Co.,* 465 F.2d 1320, 1324 (6th Cir.1972); *South Carolina Nat'l Bank v. Lumbermens Mut. Casualty Co.,* 526 F.Supp. 94, 96 (D.S.C.1981); *Currie v. Great Cent. Ins. Co.,* 374 So.2d 1330, 1332 (Ala.1979); *Commonwealth Edison Co.,* 41 Ill.Dec. at 592, 407 N.E.2d at 1090; *Georgia–Pacific Corp.,* 395 So.2d at 858; *F & F Constr. Co. v. Royal Globe Ins. Co.,* 423 N.E.2d 654, 656 (Ind.Ct.App.1981); *Weathers v. Hartford Ins. Group,* 77 N.J. 228, 390 A.2d 548, 550 (1978); *Texas Employers Ins. Ass'n v. Wermske,* 162 Tex. 540, 349 S.W.2d 90, 92 (1961); *Christnacht v. Department of Indus., Labor & Human Relations,* 68 Wis.2d 445, 228

N.W.2d 690, 693–94 (1975). We need not decide which standard applies in Utah at this time.

1. We have previously noted that the failure to object to summary judgment affidavits can result from a "calculated risk" as well as an "oversight." *Salt Lake City Corp. v. James Constructors, Inc.,* 761 P.2d 42, 46 n. 8 (Utah App.1988). This is because the upshot of a well-taken motion to strike is usually not just the striking of the affidavit; the striking is typically accompanied by an opportunity on the proffering party's part to submit an affidavit free of the problems objected to. *See id.* Of course, such a scenario is consistent with "the end that the truth may be ascertained and proceedings justly determined." Utah R.Evid. 102. Nonetheless, counsel may sometimes prefer to take their chances that no appeal will be taken or, if one is, that the lack of a motion to strike will go unnoticed or be glossed over by the appellate court.

1991, and that a copy, addressed to the Utah Attorney General, was deposited by Snuffer's secretary to the United States Mail on November 26 or 27. The problem with Snuffer's affidavit is that he testifies to matters that are not within his personal knowledge, but rather that of his secretary. However, lack of personal knowledge is the very kind of thing that must be first assailed in a motion to strike. *See, e.g., Franklin Fin.*, 659 P.2d at 1043–44 (where no motion to strike, objection to affidavits based on, inter alia, a lack of personal knowledge was waived); *Fox*, 453 P.2d at 702–03 ("By failing to move to strike the affidavit . . ., the plaintiff waived the right to show whether the affiant knew first handed that about which he deposed.").

Absent a motion to strike or an equivalent objection, the second affidavit stands admitted and the statements made therein are taken as true. The objections now made to the evidentiary foundations for the admittedly conclusory statements in the affidavit have been waived. Flawed though it may be in an ultimate sense, the affidavit thus sets forth facts that create a material dispute about whether notice was sent to the Attorney General. Accordingly, I would reverse the summary judgment on this basis and remand for trial.